Lee CLARK, A minor by his father and natural guardian, Carl B. Clark, et al., Appellants,

v.

SYMONETTE SHIPYARDS, LTD., Appellee.

SYMONETTE SHIPYARDS, LTD., Appellant,

v.

Lee CLARK, A minor by his father and natural guardian, Carl B. Clark, et al., Appellees.

No. 20734.

United States Court of Appeals Fifth Circuit.

March 19, 1964.

Rehearing Denied April 21, 1964.

Arthur Roth, Miami, Fla., for appellants.

W. F. Parker, Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, and PHILLIPS* and JONES, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal of the consolidated cases of an injured person and the personal representative of a deceased person from an adverse judgment by the trial

* Of the Tenth Circuit, sitting by designation.

court in admiralty holding that the ship on which they were injured was not unseaworthy, and holding further that their injuries were caused solely by their own negligence, and that they were thus not entitled to recover. The trial court allowed the injured person a recovery of $1,000 for maintenance and cure and allowed the personal representative of the deceased person the sum of $1250 for funeral expenses. These allowances are the subject of a cross appeal by the Symonette Shipyards, Ltd.

Although the record, as it comes to us, is greatly complicated by the fact that here were at least three actions by each of two persons on varying theories of liability, and that there were four amended complaints filed before the case terminated, the issues finally come within a fairly simple compass. The issue is: Were these appellants seamen, at least to the extent that they were protected by the doctrine of unseaworthiness, and, if so, was the trial court's finding that the death and injury complained of were solely caused by the negligence of the individuals and not by the events preceding it, which the trial court found to be palpably negligent, clearly erroneous?

The facts necessary to be stated in order to pose the issues accurately are as follows: Lee Clark, a minor, and Albert Zannino were two of six men who were employees of one Wilson who had a contract to erect certain petroleum product tanks in Haiti. Wilson arranged for the transportation of the tanks together with the necessary equipment to be used in their erection on a landing craft owned by Symonette Shipyards, Ltd. As a part of the agreement of transportation Symonette, acting through its proper representative, agreed with Wilson to transport the six men with the understanding that in order to comply with the laws of the Bahamas the men would have to be signed on as if they were members of the crew, although it was agreed that they should perform no duties for the ship. This subterfuge was to obviate the penalty that the ship would be subjected to if it carried passengers, since under the Bahama regulations it was not permitted to land with passengers. Included in the equipment put on board was a large crane, which both Wilson and the ship's captain understood was to be used by Wilson's men, including Zannino and Clark, to unload the ship when it arrived at its destination. Following a stop at Nassau for the unloading of cargo, one Ryder, who had been designated by Wilson as being in charge of the Wilson group, caused several of his group to attach an additional length of boom to the boom of the crane. In order to do this it became necessary for the men to add length to the cable that held up the boom, which, of course, in turn held the cable that would be attached to the cargo for use. In order to lengthen this cable, the men, including Zannino and Clark, under Ryder's supervision, simply placed the ends of the two pieces of cable together and clamped them in a manner that a pull on either end of the cable would tend to cause them to separate. There was no loop made with the brackets or clamps fastened over the turned-back ends of the loop.

All concede, and the trial court found, that the splicing was done in a manner which no one knowing anything about such an operation would countenance. Neither Zannino nor Clark had any special knowledge or skill in splicing cables. Thereafter, after the splice was tested by lifting against a cleat on the deck of the vessel, the crane was used to lift a hand truck. Zannino and Clark were on the deck from which the truck had been lifted and when a part fell off of it they jumped under the truck to recover the part, at which time the splice parted, the boom fell and the truck fell on the two men, killing Zannino and injuring Clark.

There is a slight dispute in the testimony as to whether the boom was to be used for the benefit of the vessel to change the trim of the ship. The master stated that the boom was being worked on solely for the benefit of Wilson and he, as master, had no concern in it, where as Clark testified that the master wished to

have the cargo moved on account of expected foul weather. There is further conflict in the testimony as to whether the six men did any work for the ship while on board. We find it unnecessary to resolve either of these conflicts. The trial court did not resolve them.

The trial court dismissed the appellant's count for unseaworthiness, presumably on the ground that it was determined that the men were not actual members of the crew since it was fully understood between the parties that their signing on a few hours after departure from Miami was merely a sham.

The trial proceeded on the issue of negligence and the trial court found that the splice was negligently done, but then found that the sole cause of the injuries to Clark and the death of Zannino was their "inattentively standing under the boom which they knew was sustained by a cable which had been spliced by inexperienced persons." The other pertinent findings of the court with respect to the splice were as follows:

"The injury to the plaintiffs occurred as a result of a defective splicing of the pendent cable of a crane.

\*   \*   \*   \*   \*   \*

"The Court finds that the pendent cable was spliced in a manner which the ordinary prudent person attempting to splice a cable would not make the splice. Such an act of splicing amounted to negligence.

\*   \*   \*   \*   \*   \*

"By undisputed testimony it was shown that this manner of splicing the cable \* \* \* was clearly not proper or safe and that such a splice would not have been made by any one with any knowledge of splicing."

\*   \*   \*   \*   \*   \*

"It is clear that Zannino and Clark had knowledge of the manner in which the cable was spliced and to some extent both participated in the splicing. It is also clear that neither had experience along this line, nor did either profess to have knowledge as to the proper methods of splicing. Nor has it been shown that any one in the group held themselves out to have such knowledge upon which Zannino and Clark could reasonably have relied."

Although, as heretofore stated, it is not necessary to resolve the question whether these six men were seamen with limited or no duties to perform aboard the vessel or were passengers who were traveling under the pretense of being seamen,[1] this does not mean that the issue of unseaworthiness is not an important issue in the case. Clearly, if the men were seamen they would be entitled to the protection of the shipowner's duty to furnish a seaworthy vessel. The reason we say it is not necessary for us to resolve this issue is that on the admitted facts we think it equally plain that these men, who were injured by equipment that the shipowner and the shipper had agreed was to be used in un-

---

1. It is a little difficult to understand why the vessel was not bound by the written articles by which the six men signed on as members of the crew in spite of the understanding had between the owner of the vessel and Wilson, the employer of the six men. It is clear from the record that none of the six men participated directly with the representative of the vessel in the arrangements that would make them something other than seamen. There is no testimony from which the trial court could find that the six men themselves ever undertook to modify the actual terms of the papers which would normally constitute the written contract between the parties. Moreover, a strong case could be made for the proposition that, no matter what the reason was for signing the men on as seamen (here it was obviously because they could not be carried as passengers), nevertheless they were signed on as such and the parties were entitled to such benefits and detriments as flowed therefrom even though they were subject to a general understanding that they were not to do any of the duties normally assigned to seamen. Again, we can but wonder: what has happened to the parole evidence rule?

loading the vessel, were equally entitled to the shipowner's obligation to prevent their being injured by any part of the vessel or the equipment used in performing the work ordinarily done by longshoremen.

In Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, the Supreme Court held that a longshoreman who had come aboard to assist in the unloading of a vessel was entitled to the shipowner's "warranty" of seaworthiness. Later, in Pope and Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143, the Court construed the Sieracki decision so as to permit it to hold that a carpenter who went aboard a vessel to repair its grain loading equipment was likewise protected by the doctrine of seaworthiness since he was exposed to the same shipboard risks as a longshoreman. Finally in Alaska Steamship Co., Inc. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, the Court, by a per curiam judgment, applied the principle of the Sieracki and Hawn cases to a situation in which the equipment that injured the stevedoring employee was equipment *brought aboard the ship by the stevedore himself*. In the light of this decision, it seems that without doubt the repair work done on the crane which was to be used for unloading the vessel placed the participants in this work in as favored a position as was the stevedore in Petterson.

We note that the trial court found that the injury to the appellants here was caused solely by their negligence. However, the Court found specifically that the equipment had been negligently repaired and that the "injury to the plaintiffs occurred as a result of defective splicing of the pendent cable of a crane." In light of the fact that the trial court held that the doctrine of unseaworthiness did not apply for the benefit of these plaintiffs, we can not permit the trial court's findings with respect to the sole cause of the injury to stand without that court's having an opportunity to consider the question of causation in light of our determination that the doctrine of seaworthiness does here properly apply.

While it is not clear exactly how the trial court concluded that "the sole cause of the injury was the plaintiffs' inattentively standing under the boom which they knew was sustained by a cable which had been spliced by inexperienced persons" in light of the court's other findings that neither Clark nor Zannino were experts with respect to splicing, and without any evidence from which the trial court could find that they individually should have known that the splice was not sufficient, nevertheless we think it would be premature for us at this time to determine whether the ultimate finding of causation was clearly erroneous. We think the trial court should consider the evidence touching on the negligence in the splicing and the negligence, if any, of the plaintiffs in reacting as they did when the boom was suspended above them in light of our holding that these plaintiffs were both entitled to the protection of the doctrine of seaworthiness.

For the reasons already enunciated, it is clear that the trial court did not err in granting the relief to Zannino and Clark for burial expenses and maintenance and cure, which it did allow.

In order that the trial court may give further consideration to the claims of Zannino and Clark arising from the condition of unseaworthiness that we think the uncontested facts clearly prove existed, the judgment against the appellants is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.