### THE BRABO.

### McCOLLEY et al. v. THE BRABO.

*(District Court, S. D. Alabama. December 10, 1887.)*

1. SALVAGE—SERVICES BY PASSENGERS.
   The steam-ship Brabo, while on a voyage, went on the rocks. Some of the crew were sick, and libelants, who were passengers, although they could have left the vessel, voluntarily, rendered sundry services, in the way of paying out cables, fastening and raising anchors, and the like. On the rise of the tide the steamer came off the rocks by means of her own engines. *Held,* that libelants were not entitled to salvage.

2. SAME—SERVICES BY PASSENGERS—QUANTUM MERUIT.
   The passengers, as well as the crew, of a vessel, being under an obligation, as long as they voluntarily remain on board, to do what they can to save the vessel, are not entitled to any compensation in the nature of *quantum meruit,* the only compensation they can claim being for salvage for extraordinary services.

3. SAME.
   To authorize compensation in the nature of *quantum meruit* there must be some proof of the reasonable value of the services rendered.

4. SAME.
   When such services, at the time they are rendered, are intended as a gratuity, they cannot subsequently be made the basis of a claim for compensation.

In Admiralty. Libel for salvage.

In November, 1887, while the steam-ship Brabo was on a voyage from Central America to Mobile, Alabama, she went on the rocks near Cape Antonio light, Island of Cuba. A large number of the crew were disa-

bied by fever, and libelants, Thomas McColley and others, who were passengers on the vessel, rendered sundry services, in the way of paying out cables, fastening and raising anchors, and the like, although they had opportunities for leaving her. On the rise of the tide the steamer came off by means of her own engines, after lightening by throwing her coal overboard.

*R. Inge Smith* and *W. C. Gaynor*, for libelants.

*Austill & Ervin* and *W. D. McKinstry*, for claimant.

TOULMIN, J., (*after stating the facts as above.*) The crew of a vessel rescued or assisted cannot claim salvage for any assistance they may have rendered in preserving the vessel, in the absence of special circumstances; as, for instance, where the ship has been finally abandoned by the master, and the crew recapture or take possession of her, and navigate her into a port of safety. If the vessel get upon a rock, the seamen must stay by and assist in saving her, and that without having any claim for salvage, unless they have been previously discharged. Nor can passengers on board of the vessel rescued, as a general rule, any more than the crew, claim salvage for any assistance they may give in preserving the vessel. They will not be entitled to salvage in the event of their voluntarily remaining on board and doing anything to save the ship. They are entitled to salvage only when they perform extraordinary services, such, for instance, as where the ship is abandoned by the master, and the crew, or a part of the crew, and the passengers assist in bringing the vessel into a port of safety. The passengers will be entitled to share with the crew in any salvage remuneration if they have joined with the crew in rendering the services for which salvage is awarded. My opinion is that the libelants in this case are not entitled to any salvage compensation—*First*, because, on their own evidence, they fail to show that they performed such extraordinary service as gives them a right to salvage; and, *secondly*, because, considering the whole evidence, it fails to satisfy me that the property was benefited by their exertions. Salvage being the compensation allowed to persons by whose assistance a ship or cargo is saved from imminent peril, if the property is not benefited by the exertions of the salvors, they can claim no compensation as salvage.

And passengers are not entitled to any compensation in the nature of a *quantum meruit* any more than the crew of the vessel is. Their relation to the ship is such that there is no such thing as a claim for meritorious services recognized by the law. They are under an obligation, as long as they voluntarily remain on board, to do what they can to save the vessel, and the only compensation they are entitled to claim is that for salvage for extraordinary services performed, such as I have already alluded to. The case in 1 Brown, Adm. 68, (*The Sailor's Bride*,) cited in argument, was where there was a claim by the owner of a steam-tug against a vessel which was aground. The master of the tug, being informed that she was desirous of being hauled off, attempted to draw her from the place where she was aground. The attempt was fruitless. The court held that no compensation as salvage could be awarded, but that

886 FEDERAL REPORTER.

the master was entitled to some compensation. The learned judge said that "as an effort was made in good faith by the master of the tug, and with means that were believed to be adequate, several hours having been laboriously employed in his efforts to remove the vessel,—one cable being broken and another cut in trying to accomplish the object,—he was inclined to think the master of the tug entitled to some compensation in the nature of a *quantum meruit*." Compensation for the time employed and for the effort made that would be reasonable, and for which the law implied a promise on the part of the owner of the vessel to pay. It will be observed that there was no obligation resting on the master of the tug to make the effort to assist the vessel, or to render the service. He had no particular relation to the ship. He was a stranger to her. Herein is the distinction between the case in 1 Brown, Adm., and the one under consideration.

But besides this, a decree is not authorized for compensation, in the nature of a *quantum meruit*, without some proof of the reasonable value of the services rendered. There is none in this case.

Again, where services are, at the time they are rendered, intended as a gratuity, they cannot subsequently be made the basis of a claim for compensation. An action for such compensation must be based on a promise, express or implied, to pay it. The evidence in this case satisfies me that, at the time the services were rendered by the libelants, they had no intention of charging for them. They were gratuitously rendered. The libelants should be commended for the willing and meritorious spirit shown by their conduct on the occasion, but, in my judgment, they are not entitled, under the law, to compensation for the services rendered, whether they were efficient or trivial.

The libel must therefore be dismissed, at libelants' cost.