48 F.2d 366 (1930)
THE TASHMOO.
FINCH
v.
BREILAND.
No. 11084.
District Court, E. D. New York.
December 13, 1930.
Alexander, Ash & Jones, of New York City (Edward Ash and Max Taylor, both of New York City, of counsel), for libelant.
Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (William H. McGrann *367 and Edwin S. Murphy, both of New York City, of counsel), for claimant.
CAMPBELL, District Judge.
This suit is brought by a member of the crew of the steamship Tashmoo against her and her cargo for a salvage award.
I find the facts as follows:
At all the times hereinafter mentioned the steamship Tashmoo was a vessel of the United States, of approximately 324 feet long, 46 feet beam, and 25 feet in depth, built in the year 1919, and of the value of $65,000.
At all the times hereinafter mentioned the said vessel, including her deck cargo, was laden with approximately 1,000,000 feet of lumber, six hundred tons of copper or copper ore, oriental rugs, fruit, and other general cargo, the value of all of which was $459,393.
On or about the 24th day of April, 1928, at San Francisco, Cal., the libelant joined the said steamship Tashmoo as an assistant steward, and signed shipping articles to serve thereon in such capacity at wages of 30 cents a month, until the said steamship arrived at the city of New York, N. Y.
The said shipping articles contained, among others, the following provision: "And the said crew agree to conduct themselves in an orderly, faithful, honest, and sober manner, and to be at all times diligent in their respective duties, and to be obedient to the lawful commands of the said master, or of any person who shall lawfully succeed him, and of their superior officers, in everything relating to the vessel, and the stores and cargo thereof, whether on board, in boats, or on shore; and in consideration of such service to be duly performed the said master hereby agrees to pay to the said crew, as wages, the sums against their names respectively expressed, and to supply them with provisions according to the foregoing scale."
After the steamship Tashmoo left San Francisco, Cal., en route for her voyage for the city of New York, N. Y., her engines became disabled, and the said vessel became subject to the effect of the wind and the tide and the elements, when approximately in the Gulf of Tehauntepec, off the West Coast of Mexico. The weather was rough, and the said vessel was off her course and was being carried offshore and out of the normal passage of vessels, and was in great danger.
The Tashmoo carried only eleven passengers and, as the total number of persons on board was less than fifty, it is conceded that the vessel was not required by law to carry either a licensed wireless operator or wireless apparatus.
The said vessel did not have among the members of her crew a wireless or radio operator to send or receive messages, nor was there any one on board of the said vessel, with the exception of the libelant, who was capable of so doing.
The said vessel was equipped with a radio apparatus which was not properly connected up, and which in its then condition could not be used for communication, or for the sending of distress signals.
In view of the condition and position of the vessel, it was necessary to send distress signals.
On a previous trip some one had tried to use the radio set, but they had set the equipment on fire and burned the radio shack.
One of the passengers, who had worked on the radio on the previous morning, stated to libelant that he had received quite a jolt.
At the direction of the master of the Tashmoo, the libelant left his duties as pantryman and set about connecting up the wireless apparatus.
No wiring diagram or blueprint of the radio set could be found on the vessel.
The libelant at some risk and danger to himself, and after working for two days and nights, except for a short period of time taken for sleep, connected up the radio on board the steamship Tashmoo, as a result of which, with slight help from a passenger named Shirley, sent the message which was received by the oil tanker Hadnot.
Had the message not been received by the Hadnot, she would not have sighted the Tashmoo, or in any event would not have seen her signals.
Some few minutes after receiving the signal the Hadnot sighted and took in tow the Tashmoo, and continued with her in tow until on or about May 10, 1928, when the Hadnot, with the Tashmoo in tow, arrived safely at Salina Cruz, in the province of Oax, republic of Mexico.
The libelant did not continue on the voyage to New York, but at his request was granted a discharge by the commissioner at Balboa, and came to New York.
On the facts as found, the situation of the ship, cargo, passengers, and crew was a most dangerous one, and the services rendered by the libelant were of value, and he incurred considerable personal risk in performing *368 the same, but the vessel was towed into port by the steamship Hadnot, and, if an award could be made to the libelant, it certainly would not be for any such sum as $15,000, the amount of the stipulation for value.
I do not minimize the value of the services rendered by the libelant, nor the risks he ran, but this is not an appeal for a gratuity nor for generosity, but an attempt to obtain that which libelant claims under the law, and my determination of this issue must be based on the law.
The libelant signed shipping articles and was a seaman and member of the crew of the steamship Tashmoo, regardless of the rating to which he was assigned. The Buena Ventura (D. C.) 243 F. 797, 799; The Georgiana (C. C. A.) 245 F. 321, 325.
Libelant was a workaway; that is, an extra man who was employed on the vessel as an accommodation to himself.
Libelant had tried to find a position on a vessel as he desired to reach New York, but no such position was available, and, in order to enable him to reach New York, he was shipped as a workaway, and assigned by the master to duty as an assistant steward, and received in return for his services 30 cents a month, his subsistence, and his transportation to New York.
The advocates for libelant contend that, because of the small salary paid and the conditions of libelant's employment, he may be considered for the purpose of a salvage award as a passenger but such contention cannot be sustained; on the contrary he was a seaman, and libelant's advocate, speaking of the libelant, on the trial of this suit said: "His status was fixed by the ship's paper which is binding on everybody."
The fact that libelant was assigned to duty as an assistant steward did not prevent the master from requiring obedience by the libelant to any lawful command.
The libelant was aboard the vessel, which he contends was in great danger as well as the lives of those on board, and I agree that the situation was dangerous, and therefore whatever efforts were put forth by the libelant were for his own personal benefit and to relieve him from danger as well as to save the ship and cargo and the lives of others, and whatever services he did perform were not voluntary services, but services which he as a seaman was ordered to perform by the master of the vessel, in an emergency, when the performance of such services was of necessity required.
Furthermore, the appliances used by libelant were all found aboard the Tashmoo, and her voyage was not ended by her being wrecked, nor was she abandoned, nor the duty of the libelant to the ship terminated before he performed the services for which he now claims a salvage award.
The relation that libelant bore to the Tashmoo prevents the making of a salvage award to him, as claims of seamen for salvage services rendered to their vessels during the voyage cannot be allowed. Coffin v. The Akbar (D. C.) 5 F. 456; The Brabo (D. C.) 33 F. 884; The C. F. Bielman (D. C.) 108 F. 878; The Comet (D. C.) 205 F. 991; The Zapora (D. C.) 205 F. 1004; The Eastern Shore (D. C.) 15 F.(2d) 82.
In the last-cited case, decided in the District of Maryland, the libelant, a member of a crew which alternately operated two ferry-boats between Rock Hall and Baltimore, viz., the Baltimore and Eastern Shore, had gone ashore to his house at the end of his work for the day, with special orders to report to the Baltimore in the morning to help make the ship ready for the repairmen and the other members of the crew being ordered to prepare the Eastern Shore for service the following morning.
While libelant was at his house that evening the Baltimore caught fire, threatening the Eastern Shore, and he responded, being among the first to arrive at the wharf, and assisted in moving the Eastern Shore to safety. Libelant claimed salvage award, on the ground that at the time of the fire he was a member of the crew of the Baltimore, that he was ashore, had finished his work for the day, and was not obliged to render the Eastern Shore any assistance. The court dismissed the libel on the ground that it could not be said that libelant was specifically attached to either vessel, but rather a seaman of both.
The only exceptions I have found to the rule laid down in the cases above cited are where the seaman's duty to his ship is terminated and his contract at an end, as in the case of a wreck followed by abandonment of the vessel, The Georgiana, supra; Mason v. The Blaireau, 2 Cranch, 240, 2 L. Ed. 266; and where the services are rendered after the wreck of the vessel, The Mary Hale, Fed. Cas. No. 9213.
As hereinbefore shown, the case at bar does not come under any of these exceptions.
The Connemara, 108 U. S. 352, 2 S. Ct. 754, 27 L. Ed. 751, was a case in which a salvage award was made to a passenger on a ship under the following circumstances:
*369 The Connemara, with a cargo consisting chiefly of cotton on board, was bound down the Mississippi under tow of the tug Joseph Cooper, Jr. She anchored one night with the towboat lashed to her side. No watch was set, and the two mates and boatswain of the ship were under the influence of liquor. Evers, the passenger, was awakened by smoke of burning cotton, and gave the alarm to the officers and crews of the ship and of the towboat.
The fire was in the poop above the main deck. Evers took part in leading the tug's fire hose on board the vessel, and the fire was extinguished in fifteen or twenty minutes without serious risk to any of the persons engaged in the operation.
Mr. Justice Gray, writing for the Court, at page 358 of 108 U. S., 2 S. Ct. 754, 757, said: "A passenger cannot, indeed, recover salvage for every service which would support a claim by one in no wise connected with the ship. In the case of a common danger, it is the duty of every one on board the ship to give every assistance he can, by the use of all ordinary means in working and pumping the ship, to avert the danger. Yet a passenger is not, as the officers and crew are, bound to stand by the ship to the last; he may leave her at any time and seek his own safety; and for extraordinary services, and the use of extraordinary means, not furnished by the equipment of the ship herself, by which she is saved from imminent danger, he may have salvage. * * *" This case is not an authority in support of libelant's contention, as in the case at bar the libelant was a seaman, not a passenger, the equipment was all furnished by the ship herself, and the services were rendered by order of the master.
A number of cases have been cited on behalf of the libelant which are either not in point or clearly distinguishable from the case at bar.
The Lakme (D. C.) 93 F. 230, 232, is not a salvage case. It holds that seamen who are directed by their master to work overtime, on Sundays and holidays, may recover additional wages, on the ground that such work was beyond their contract, there not being an emergency. This case would not be an authority in support of libelant's claim, even if he was claiming for work overtime, as he has clearly shown the existence of an emergency.
The Two Catherines, Fed. Cas. No. 14,288, 2 Mason, 319, 338, is clearly distinguishable from the case at bar.
In that case Mr. Justice Story held that, under the law prevailing at that time, the wreck of the vessel deprived the seamen of their right to wages, but, if seamen return to the wreck and salve valuable property, they are entitled to recover their wages from the value of the property salved. This is certainly not an authority for a salvage award in a case like that at bar, where there was no wreck, and the alleged salvage services were performed during the voyage, under the orders of the master.
Hobart v. Drogan, 10 Pet. 108, 9 L. Ed. 363. In this case a brig was bound into Mobile, and her pilot discharged by the master at the customary place. She continued on her way up Mobile Bay for a time, and then came to anchor, and during the night was blown ashore in a gale. At noon the next day the master and crew abandoned her. On the morning of the next day, the master made arrangements with certain pilots of the port of Mobile to salve the vessel, and their efforts were successful.
The shipowner defended on the ground that the salvors were pilots, and by virtue of their office, incapable of becoming salvors.
The court held that libelants had a proper claim for salvage award, on the ground that none of them were at the time of the salvage service connected in any way with the vessel.
This case is clearly not in point.
The Mary Hale, Fed. Cas. No. 9213, has been cited, supra, as an exception to the general rule. In this case a ship laden with cotton, from New Orleans bound to Trieste, was lost on Keysal Bank. The mate with four men, at the request of the master, crossed the gulf in an open boat and brought information of the ship's condition to the wreckers in this port, as a result of which the wreckers saved the ship's material and 970 bales of cotton. The court allowed a small sum to the mate and the four men, on the ground that their services were extraordinary, and beyond the line of their duty, and entitled them to compensation.
This case is distinguishable from the case at bar, in which there was no wreck and no leaving of the ship by the libelant.
Sloane v. Udle, 6 Newfoundland Reports, 217. In this case the salvors were not in any way connected with the vessel in distress, although apparently employed by a common owner. The distressed vessel was a fishing vessel, and it was contended by way of defense that all paid servants in the fisheries were by contract and custom bound *370 to render salvage services to other vessels in the fisheries. The court in its opinion said that there was no evidence of any custom, and that the salvors proceeded in another schooner to the scene of the wreck and rendered salvage services under an alleged express promise by the defendant that he would satisfy or remunerate them. An award to them was sustained.
This case is not in point, the salvors were not members of the crew, nor were the services performed during the voyage, but after a wreck.
Mason v. The Blaireau, 2 Cranch, 240, 2 L. Ed. 266, hereinbefore cited as an exception to the general rule. In this case the ship and cargo were abandoned by the officers and all of the crew with the exception of one man, Thomas Toole, who was not allowed in the first boat that left and refused to leave in any other. While alone on the vessel he cut away the anchors and the bow-sprit, got the vessel before the wind, and hoisted a signal of distress, which was observed by the ship Firm on the next day and she brought her into port. The court allowed a salvage award to the ship Firm, her crew, and Thomas Toole.
This case is clearly distinguishable from the case at bar, in which there was no abandonment of the ship or services rendered by libelant after such abandonment, but services performed by libelant during the voyage by order of the master.
I therefore conclude as a matter of law:
That libelant was a seaman on the Tashmoo, and as such is not entitled to a salvage award against the steamship Tashmoo and her cargo, for services rendered on the voyage, on the orders of the master of the Tashmoo in connecting up the wires of the radio set, involving personal risk, and sending out an S. O. S. signal which resulted in the Hadnot sighting the Tashmoo and towing her into port.
That the libel should be dismissed with costs.
A decree may be entered in favor of the steamship Tashmoo against the libelant, with costs.
Settle decree on notice, and, if it is not believed that this opinion is a sufficient compliance with Rule 46½ of the General Admiralty Rules (28 USCA § 723), findings of fact and conclusions of law may be submitted.