Felix BODDEN, Appellant,

v.

COORDINATED CARIBBEAN TRANS-
PORT, INC., Appellee.

No. 23373.

United States Court of Appeals
Fifth Circuit.

Nov. 21, 1966.

Saul J. Cooper, Arthur Roth, Miami, Fla., for appellant.

Roland R. Parent, Smathers & Thompson, Miami, Fla., for appellee.

Before WISDOM, BELL, and GODBOLD, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

Appellant sought damages under the Jones Act, 46 U.S.C.A. § 688, for personal injuries allegedly sustained in the course of his employment as a seaman aboard defendant appellee's vessel, the M/V Freight Forwarder. Summary judgment was entered for defendant on the ground that the vessel was not in navigation and thus appellant was not a seaman within the meaning of the Jones Act. This appeal followed. We reverse.

On March 3, 1964, the M/V Freight Forwarder was taken out of service and laid up at Jones Boat Yard on the Miami River. The vessel was cleaned and secured and the crew was paid off. On November 11, 1964, defendant decided to reactivate the vessel in view of the fact that two of its other vessels were due for annual dry-docking. The necessary personnel was engaged to examine, repair and put the vessel into operating condition. The work was completed and the vessel ready for service on December 7, 1964. It actually began its first voyage two days thereafter.

The injuries complained of occurred on December 4, 1964 when a piston fell on appellant while he was assisting in removing it from the main engine of the vessel. Appellant was serving his night watch at the time.

Appellant was hired as a mechanic on November 15, 1964 at a monthly wage of $240.00 plus room and board aboard the vessel. On November 30, 1964, he signed shipping articles as a second engineer on the vessel at a monthly wage of $275.00. He was paid his November wages at the end of November, and on December 1, 1964 his pay changed to $275.00 in accordance with the terms of the articles. The articles required appellant to live on the vessel and he was actually living on the vessel when injured. He was also required to obey the orders of the Master, subject to a penalty for non-compliance. He was discharged by defendant on March 19, 1965 when he refused to release defendant from liability for the injuries which are the subject matter of this suit.

The question presented is whether appellant was a seaman within the meaning of the Jones Act at the time of his alleged injuries. Under the Jones Act, the terms "member of a crew" and "seaman" have been equated. This stems from language in the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., which covers all maritime workers except masters or members of a crew of a vessel. That Act and the Jones Act are mutually exclusive, with the Jones Act being limited to a master or member of the crew of a vessel. Swanson v. Marra Bros., Inc., 1946, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045.

There are three essential elements in the term "seaman" as used in the Jones Act. First, the vessel on which the claimant is employed must be in navigation. Second, there must be a more or less permanent connection with the vessel, and third, the claimant must be aboard primarily to aid in navigation. McKie v. Diamond Marine Co., 5 Cir., 1953, 204 F.2d 132. The only element in dispute here is whether the vessel was in navigation.

This basic question must be resolved by a consideration of the totality of circumstances. Thus, the fact that

plaintiff had signed shipping articles is an important circumstance. There is authority for the proposition that one becomes a seaman from the time of signing the articles and that his status and obligations are determined thereby. Tucker v. Alexandroff, 1902, 183 U.S. 424, 22 S.Ct. 195, 46 L.Ed. 264; The Ida G. Farren, E.D.N.C., 1904, 127 F. 766; Cf. Clark v. Symonette Shipyards, Ltd., 5 Cir., 1964, 330 F.2d 554, and see also 46 U.S.C.A. §§ 564 and 567 on the requirement for shipping articles.

But the mere fact that appellant was under articles was not the only circumstance before the District Court. The vessel had been withdrawn from service but it was being returned to service. She had a captain and a crew. Appellant was only one of fifteen crew members at the time of his injury, all of whom were under articles. The articles were for a voyage from Miami, Florida to Matias de Galvez, Guatemala and to other such ports as the Master might direct. Such voyage was actually begun five days after appellant's injury.

██ Whether a person is a seaman depends largely on the facts of a particular case, or as stated, on the totality of circumstances. It would be the rare factual situation where the question could be resolved as a matter of law. The Second Circuit put it well in Hawn v. American S.S. Co., 2 Cir., 1939, 107 F.2d 999:

"It is impossible to define the phrase, 'member of a crew', in general terms; the words are colloquial and their fringe will always be somewhat ragged. Perhaps the best hope is that, as the successive variants appear, they will finally serve rudely to fix the borders."

██ Some of the variants may be seen in the several cases involving the question of whether the vessel on which the claimant was employed was in navigation. The outer limits of the question may be drawn from these cases. For example, we stated in McKie v. Diamond Marine Co., supra:

"The nautical phrase, 'plying in navigable waters' does not mean that the vessel must, at the very moment of the injury, have been actually in motion on navigable waters."

Thus, if the vessel is temporarily in dry dock for repairs, it remains in navigation. Hunt v. United States, S.D.N.Y., 1936, 17 F.Supp. 578. On the other hand, where a vessel is laid up for the winter, the crew having been discharged, and the boat is being secured by workmen paid at an hourly rate and living ashore, the ship is no longer in navigation. Seneca Washed Gravel Corp. v. McManigal, 2 Cir., 1933, 65 F.2d 779. The same is true where the vessel is tied up for the winter with only a maintenance crew, and claimant, a crew member during season, is retained as a laborer on an hourly basis and is not required to live aboard the vessel. Nelson v. Greene Line Steamers, Inc., 6 Cir., 1958, 255 F.2d 31. Cf. Antus v. Interocean S.S. Co., 6 Cir., 1939, 108 F.2d 185; Taylor v. McManigal, 6 Cir., 1937, 89 F.2d 583. In Frankel v. Bethlehem-Fairfield Shipyard, Inc., 4 Cir., 1942, 132 F.2d 634, the ship was found not to be in navigation where it had been launched but not commissioned, was not fully completed, and the claimant was working under a non-maritime contract. In Hawn v. American S.S. Co., supra, a directed verdict against claimant was affirmed where the vessel was out of commission and was being used to store soya beans. See also Carumbo v. Cape Cod S.S. Co., 1 Cir., 1941, 123 F.2d 991; 1 Norris, The Law of Seamen (2 ed., 1962), pp. 793–800; 1 Edelman, Maritime Injury and Death (1960), pp. 76–82.

The decision nearest in point to the view of the District Court in this case is Desper v. Starved Rock Ferry Co., 1952, 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205. There the claimant was engaged in reconditioning sightseeing boats which were laid up for the winter. They were beached and put on blocks. Claimant

was an operator of one of the boats during the season and his employment terminated upon the boat's being taken out of the water and blocked up for the winter. He was re-employed in March and was engaged in preparing the boats for navigation. The court in affirming the reversal of a jury verdict for claimant by the Seventh Circuit, pointed out that the boats were not afloat and had neither captain nor crew. The work being done was of the type usually done by shore-based personnel.

We followed *Desper* in Harris v. Whiteman, 5 Cir., 1957, 243 F.2d 563, and affirmed the direction of a verdict for a shipowner. The claim was brought under the Jones Act and one of the principal questions was whether the vessel was in navigation. The facts were that the ship in question was a "dead ship" on which no steam had been raised during the year 1953, which had no crew, and which had no coast guard certificate permitting it to operate. The employee in question was a laborer working for an hourly wage on the day when he disappeared. The Supreme Court reversed per curiam sub nom. Butler v. Whiteman, 1958, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754, holding that the evidence presented an evidentiary basis for jury findings as to whether or not the vessel was in navigation and whether or not the employee was a seaman and member of the crew within the meaning of the Jones Act. The facts are stated in the dissenting opinion. The vessel in question had been withdrawn from navigation because it was inoperable. During the entire year 1953 it had neither captain nor crew, and reported no earnings. At the time of the accident, it was undergoing rehabilitation preparatory to a coast guard inspection in anticipation of returning to service. The employee in question was a laborer doing odd jobs around the defendant's wharf, the defendant owning a wharf, barge and tug, all situated on the Mississippi River. The barge was moored to the wharf and the tug was lashed to the barge. On the morning of the accident the employee had been engaged in cleaning the boiler of the tug.

It will thus be seen that the facts determinative of the navigation status of the M/V Freight Forwarder go much further in making a jury question than did those in the *Whiteman* case. She had a captain and crew and a voyage was imminent. Appellant was bound by the articles, lived on the vessel and was subject to the discipline of the ship.

 We hold that the appertaining facts made out a jury question with regard to whether the vessel was in navigation at the time appellant was injured, and thus as to whether appellant was a seaman within the meaning of the Jones Act. It was error to dispose of the case by summary judgment.

Reversed and remanded for further proceedings not inconsistent herewith.