**Ulrich B. STEUER, Plaintiff,**

**v.**

**N. V. NEDERL–AMERIK STOOMVAART MAATSCHAPPF (HOLAND–AMERIK-LIJN), d/b/a Holland America Lines, Defendant.**

**Civ. No. 72-1856.**

United States District Court,
S. D. Florida,
Fort Lauderdale Division.

June 29, 1973.

Arthur Roth, Miami, Fla., for plaintiff.

Reginald M. Hayden, Jr., Miami, Fla., for defendant.

### FINAL JUDGMENT

ROETTGER, District Judge.

This admiralty case involves a claim for cure, maintenance having been waived. The facts are largely undisputed.

Plaintiff is a Jewish Rabbi who had to retire in 1969 as a result of hypertension and was receiving total disability payments from Social Security for his condition. He moved to South Florida from Chicago and suffered a heart attack in 1970.

Plaintiff wrote several cruise lines and made himself available to serve as a clergyman on a cruise. The court takes judicial notice that conducting church services aboard a cruise vessel in return for free passage has been a "fringe benefit" enjoyed by many clergymen in the Fort Lauderdale area. It provides them a vacation not normally within the scope of their spartan salaries and, when appropriate, frequently the church congregation makes a gift of the wife's fare so she may accompany her husband.

In his letters Rabbi Steuer indicated that he had found a cruise he had previously taken to be very rewarding and he would expect no remuneration for his services, merely free passage for himself and his wife. One of these letters dated May 11, 1971 went to the defendant, Holland America Lines.

By letter dated August 10, 1971 the "Passenger Division" of Holland America Lines responded with a form letter indicating that Rabbi Steuer had been "appointed" as Jewish Chaplain on board NIEUW AMSTERDAM for a cruise departing November 21, 1971. This letter advised plaintiff that he would receive a free cruise but his wife would have to pay her passage and both would have to pay any incidental expenses such as laundry, bar, etc. Plaintiff accepted this arrangement and remitted payment for his wife's ticket. Both of these tickets were identical with the single exception that the Rabbi's was marked "FREE" in the column indicating the amount paid. The tickets had the words "Passage Contract" and "issued subject to the terms and conditions on page 1 through 3" clearly stamped

upon them.[1] The terms and conditions referred to, in part, spelled out the liability of Holland America Lines to the holder of a passenger ticket. Not surprisingly, these conditions did not include any right to maintenance and cure.

Plaintiff boarded the ship on November 21, 1971. He and his wife [2] were assigned to a passenger stateroom; they ate in the passenger dining room and in all respects were treated as passengers. The only thing that distinguished Rabbi Steuer from any other passenger was the fact that on Thanksgiving, which holiday fell within the duration of this voyage, and Friday evening he was expected to conduct religious services. In preparation for these duties the Rabbi had previously prepared a service and while on board ship had a consultation with the other clergymen.

Two days after boarding, on November 23, 1971 the Steuers went sightseeing and shopping in St. Thomas. After about two hours the Rabbi began to feel ill and returned to the ship. His condition deteriorated overnight and the next day he deboarded at St. Maarten and was taken to a cardiologist on the island.[3] Rabbi Steuer never returned to the ship but remained in the hospital on St. Maarten for 16 days, after which time he returned to Florida and entered a local hospital and has suffered several heart attacks since. Plaintiff seeks recovery of $17,792.60 for cure. No testimony was introduced that plaintiff had made any request of the defendant for a "hospital ticket". 42 U.S.C. § 249(b).

The issue of liability in this case turns on the resolution of one question: was Rabbi Steuer a seaman?

■ A "seaman" is entitled to maintenance and cure for any injury or illness suffered while in the service of his ship. The liability is contingent upon neither fault nor negligence of the ship or ship owners; nor for that matter need his injury be even causally related to his shipboard duties. This doctrine was first recognized in this country by Justice Story (sitting as a Circuit Judge) in Harden v. Gordon, 11 F.Cas. p. 480 (No. 6,047) (C.C.D.Me.1823) because "[s]eamen are by the peculiarity of their lives liable to sudden sickness from change of climate, exposure to perils, and exhausting labour" (*Id.* at 483) and to protect seamen, who as a class are poor, friendless and improvident, from the perils of being abandoned while sick and further to stimulate masters to protect the safety and health of seamen. See also Reed v. Canfield, 20 F.Cas. p. 426 (No. 11,641) (C.C.D.Mass. 1832) (Story, J.).

■ The test of whether one employed on a vessel is a "seaman" and, therefore, entitled to the benefits of this extraordinary remedy, is threefold: (1) that the vessel must be in navigation;

1. The court is not unmindful that the word "staff" had been typed on Rabbi Steuer's ticket, but concludes that single factor is not determinative of the issue.

2. Members of the crew do not take their wives aboard NIEUW AMSTERDAM for a cruise.

3. Rabbi Steuer's testimony contained in his deposition and that of Mrs. Steuer reveal that plaintiff's chief complaint was the understandable insistence of the ship's doctor that he remain under the care of the cardiologist on St. Maarten when plaintiff wanted to return to the vessel and be treated in the ship's sick bay, staffed by at least one doctor, six nurses and having no other patients.

Otherwise, his testimony is quite complimentary of the medical treatment aboard ship, but critical of the facilities at St. Maarten.

The general tenor of these complaints strongly resembles that of disgruntled passengers: not only did the stay on St. Maarten become expensive to the Steuers, but rather than providing speedier passage aboard ship back to the United States at no additional expense, defendant refused to refund Mrs. Steurer's unused portion of her ticket. The court suspects that these grievances and the failure to redress them resulted in the Rabbi's acquaintance with the doctrine of maintenance and cure.

(2) that there be a more or less permanent connection with the vessel, or that he perform a substantial part of his duties aboard the vessel; (3) that the worker be aboard primarily to aid in navigation or that his duties contribute directly to the mission or purpose of the vessel. Offshore Co. v. Robison, 266 F. 2d 769 at 775 and 779 (5th Cir. 1959). It follows from this definition that a "passenger" is not entitled to maintenance and cure.

█ There is no single touchstone indicating whether a particular person is a seaman within the meaning of admiralty jurisprudence; instead the answer must be provided from a consideration of the totality of circumstances presented. The Fifth Circuit in Bodden v. Coordinated Caribbean Transport, Inc., 369 F. 2d 273 (5th Cir. 1966) quoted approvingly from Hawn v. American S.S. Co., 107 F.2d 999 (2d Cir. 1939):

"It is impossible to define the phrase, 'member of a crew', in general terms; the words are colloquial and their fringe will always be somewhat ragged. Perhaps the best hope is that, as the successive variants appear, that will finally serve rudely to fix the borders". *Id.* 369 F.2d at p. 275.[4]

However unusual this fact situation may be, it is possible to obtain a fairly reliable fix to determine the question presented.

Plaintiff urges upon the court that it is not necessary for one to engage in traditional maritime occupations, such as deck hand, or an engineering rating in order to qualify as a seaman. Shipboard occupations such as barbers[5], maids[6], waiters[7], muleteers[8], horsemen[9], and laundresses[10], have all been classified as seamen. Plaintiff's urgings miss the mark: the question is

4. Although some technical distinction still exists between "seaman" and "member of the crew", Noble Drilling Corp. v. Smith, 412 F.2d 952 (5th Cir. 1969), it is inapplicable here. Despite the difference in the historical development of the doctrine of maintenance and cure and the Jones Act, the definition of a "seaman" is the same under both. Weiss v. Central Railroad Co. of New Jersey, 235 F.2d 309 (2d Cir. 1956). The definition of a "seaman" sometimes presents itself in cases involving liens for wages, claims for salvage, immigration laws, etc. but these cases have been avoided in this decision, except where noted.

5. He was, however, "named as a seaman in the shipping articles." Agnew v. Am. President Lines, 73 F.Supp. 944, 951 (N.D.Calif.1947); reversed in part on other grounds 177 F.2d 107 (7th Cir. 1949); cert. denied 339 U.S. 951, 70 S.Ct. 838, 94 L.Ed. 1364 (1949).

6. She was clearly a crew member who worked and ate with the crew, slept in crew spaces and was sent ashore by the Captain with a "hospital ticket" which would qualify her for admission to a United States Marine Hospital. Spellman v. Am. Barge Line Co., 176 F.2d 716 (3rd Cir. 1949).

7. He had signed new articles and was entitled to maintenance for an injury which occurred during shore leave in his home port. Lawler v. Matson Navigation Co., 108 F.Supp. 946 (N.D.Cal.1952), aff'd 217 F.2d 645 (9th Cir. 1954).

8. Libellant was employed by the master as a muleteer to care for mules, the ship's cargo. He was injured while standing watch under threat of fine and imprisonment if he did not obey. The Baron Napier, 249 F. 126 (4th Cir. 1918).

9. The case involved persons employed to tend horses aboard ship and they had signed the ship's articles; they were acknowledged to be seamen but the case turned on interpretation of the immigration acts. United States v. Atl. Transport Co., 188 F. 42 (2d Cir. 1911); cert. denied 223 U.S. 724, 32 S.Ct. 525, 56 L. Ed. 631.

10. Plaintiff was employed aboard a river towboat as a laundress and received a "hospital ticket" from the captain after her injury. Neville v. Am. Barge Line Co., 105 F.Supp. 408 (W.D.Pa.1952), aff'd 218 F.2d 190 (3d Cir. 1954).

not whether the list of traditionally non-maritime occupations can be expanded to admit the clergy. The answer to that question is plainly "yes", in the case of a full-time ship's chaplain, for example. Rabbi Steuer clearly is not such a ship's chaplain. The question remains whether these particular facts will support a finding that Rabbi Steuer qualifies as a seaman.

In each of the cited instances involving non-traditional maritime rates, the plaintiff seeking status as a seaman clearly had seaman papers and had signed the ship's articles or lived and worked as a crew member aboard the vessel, or both; plus, each was plainly subject to the perils of being a member of the crew and the discipline of the master of the vessel as such crew member.

It is undisputed that Rabbi Steuer was treated as a passenger aboard the ship. He ate with the passengers, slept in a regular passenger accommodations, had all the shipboard privileges of a passenger, was listed on the passenger list and even carried a passenger ticket.[11] Additionally, the Rabbi was not subject to the discipline of the ship's Master nor, other than the risks taken by any passenger, did he undergo the hazards of the sea to which crew members were exposed. *See* Kimble v. Noble Drilling Corp., 416 F.2d 847 at 849 (5th Cir. 1969) and Bodden v. Coordinated Caribbean Transport, Inc., 369 F.2d 273 at 276 (5th Cir. 1966). Under these circumstances it is this court's opinion that Rabbi Steuer was a passenger aboard the ship NIEUW AMSTERDAM and not a "poor, friendless and improvident seaman" entitled to maintenance and cure.

The court has also considered whether plaintiff falls within the category of a seaman who is designated a workaway. In United States v. Firth, 207 F.2d 665 (9th Cir. 1953), the court quotes approvingly from 2 Norris, Law of Seamen (1952) § 654, p. 316:

"A workaway is a stranded or repatriated individual, who signs the articles and agrees to perform some service in exchange for his transportation —invariably for wages at a nominal amount. By signing the articles and becoming a member of the ship's company and being engaged on a vessel in navigation and doing work of a maritime nature he is a seaman, and when injured by reason of his employer's negligence he has a Jones Act remedy." *Id.* at 666.

Cited as supporting this definition is the case of The Tashmoo, 48 F.2d 366 (E. D.N.Y.1930), in which a workaway attempted to escape the status of being a seaman in order to claim certain salvage rights. Neither by the standards of the definition in *Firth* nor by the tests set forth in *The Tashmoo* can plaintiff qualify as a workaway.

The court is not at all unmindful of the long standing proposition that doubts as to the liability for maintenance and cure are to be resolved in favor of the wounded seaman. Aguilar v. Standard Oil Co., 318 U.S. 724 at 735, 63 S.Ct. 930 at 936, 87 L.Ed. 1107 at 1116 (1942); Warren v. U. S., 340 U.S. 523 at 530, 71 S.Ct. 432 at 436, 95 L.Ed. 503 at 510 (1951).

However, in *Aguilar* and *Warren* the plaintiffs were unmistakably members of the crew and the question presented was whether injury during shore leave brought them under the exclusion of not being in service of the ship at the time of the injury, thereby barred from maintenance and cure. A liberal interpretation to provide maintenance and

---

11. The defendant asserts that the fact Rabbi Steuer carried a passenger ticket and did not sign shipping articles is itself sufficient to preclude recovery. This court disagrees. While these facts help to show one's status as a passenger they are not in and of themselves determinative. *See* Noble Drilling Corp. v. Smith, 412 F.2d 952, 957 (5th Cir. 1969).

cure under those circumstances is in keeping with the spirit of centuries of admiralty law. Moreover, the rationale set forth in *Aguilar*, 318 U.S. at 733, 63 S.Ct. 930 et seq., hardly lends support to a recovery by Rabbi Steuer.

The court has also considered the rather expansive interpretation of the definition of a seaman in Carumbo v. Cape Cod S.S. Co., 123 F.2d 991, 995 (1st Cir. 1941). The broad generality of *Carumbo* has not been mechanically applied by the courts or it would have been unnecessary for courts to consider whether the plaintiff was a seaman in the many decisions since 1941 by various circuits, especially in the Fifth Circuit, plus at least seven decisions by the Supreme Court.[12]

Based on these findings this court concludes that the plaintiff fails the traditional test of being a seaman in at least this respect: there is no "more or less permanent connection with the vessel".

More specifically, under these particular circumstances where Rabbi Steuer received a free passage for a resort cruise, lived and ate as a passenger, was subject to the discipline of a passenger rather than that of a crew member, had no duties except to perform religious rites on two occasions during the cruise, was retired because of a heart condition qualifying him for total disability, and while engaged in the rigors of sightseeing at the first port of call the Rabbi suffered another heart attack, to conclude that Rabbi Steuer was a seaman would be an impossible strain on the imagination and would defy not only the law but common sense.

The court therefore does not reach defendant's contention that plaintiff is barred from recovery for failure to disclose his condition prior to the voyage. Judgment is, accordingly, entered in favor of the defendant.

12. Butler v. Whiteman, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754 (1958); Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958); Senko v. LaCrosse Dredging Corp., 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957); Desper v. Starved Rock Ferry Co., 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205 (1952); Swanson v. Marra Bros., Inc., 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946); Norton v. Warner Co., 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 931 (1944); O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596 (1943).