James BOYD and Elizabeth Boyd,
Plaintiffs–Appellants,

v.

FORD MOTOR COMPANY; Rouge Steel Company; the Motor Vessel Ms. Henry Ford II, Defendants–Appellees.

No. 91–1285.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 26, 1991.

Decided Nov. 6, 1991.

Alvin L. Levine, Bloomfield Hills, Mich. (argued and briefed), for plaintiffs-appellants.

Paul D. Galea, John L. Foster, Paul A. Kettunen, Foster, Meadows & Ballard (argued and briefed), Detroit, Mich., for defendants-appellees.

Before MILBURN and SUHRHEINRICH, Circuit Judges; and JORDAN, District Judge *.

* Honorable Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

MILBURN, Circuit Judge.

Pursuant to a stipulation of the parties which resulted in a voluntary dismissal of all remaining claims following the entry of a partial summary judgment in favor of the defendants, the district court entered a final judgment in the case below. Plaintiffs James and Elizabeth Boyd appeal the partial summary judgment in this personal injury action brought under 46 U.S.C.App. § 688 ("Jones Act") and general maritime law. The principal issue in this case is whether or not THE MOTOR VESSEL MS. HENRY FORD II was a vessel in navigation on February 11, 1987, thereby giving plaintiff James Boyd the status of a seaman under the Jones Act when he allegedly fell and injured himself aboard the vessel. For the reasons that follow, we affirm.

## I.

### A.

On March 28, 1990, James Boyd and his wife, Elizabeth Boyd, filed a complaint in the district court alleging that James Boyd was injured on four occasions while employed as a seaman by the defendants, the Ford Motor Company, the Rouge Steel Company, and THE MOTOR VESSEL MS. HENRY FORD II. In Count I of their complaint, plaintiffs alleged negligence on the part of the defendants and asserted remedies under the Jones Act. In Count II James Boyd asserted that his injuries were caused by an unsafe dock and the unseaworthiness of the defendant vessel. In Count III James Boyd asserted claims for maintenance and cure with respect to each of his injuries. Additionally, his wife, Elizabeth Boyd, presented a claim for loss of consortium.

The first three of the four injuries alleged by plaintiff James Boyd occurred in 1982, 1984, and 1985. Because these injuries occurred outside the applicable three-year limitations period, the district court granted summary judgment in favor of the defendants as to all the Jones Act and unseaworthiness claims.

Plaintiff James Boyd's fourth injury was alleged to have occurred on February 11, 1987, or within the three-year limitations period for bringing claims under the Jones Act and for unseaworthiness. However, upon determining that the MS. HENRY FORD II was not "in navigation" on February 11, 1987, the district court granted partial summary judgment on all claims arising out of Mr. Boyd's alleged injury on that date, including the claim for maintenance and cure. With respect to the claims for maintenance and cure based on the alleged injuries in 1982, 1984, and 1985, the district court denied defendants' motion for summary judgment but later dismissed those claims, as earlier stated, on stipulation of the parties and entered a final judgment.

◼ Plaintiffs have not chosen to raise a question concerning the district court's ruling that the claims arising from injuries allegedly sustained in 1982, 1984, and 1985 are time-barred. Accordingly, any issues pertaining to that ruling are considered abandoned on appeal and thus not reviewable. *See First State Bank v. City and County Bank*, 872 F.2d 707, 719 n. 5 (6th Cir.1989); *McMurphy v. City of Flushing*, 802 F.2d 191, 198–99 (6th Cir.1986). The only ruling of the district court which the plaintiffs have appealed is the granting of partial summary judgment to the defendants on all claims arising from the injuries plaintiff Mr. Boyd allegedly sustained on February 11, 1987.

### B.

The underlying facts in this case are not disputed. Within a few days of Christmas, 1986, and before January 1, 1987, THE MOTOR VESSEL MS. HENRY FORD II, a ship in navigation on the Great Lakes, entered port at Dearborn, Michigan, to conclude its sailing season by entering a phase known as "winter lay-up." The vessel was moored to its dock with its normal lines and with additional "winter lines" designed to insure a stronger and more permanent attachment to the dock. Shortly after the ship was moored, the sailing crew, with certain exceptions, was paid off and dismissed.

Plaintiff Boyd, however, with other members of the ship's engineering crew, remained with the vessel to supervise the winter lay-up activities. As of January 8, 1987, plaintiff's employment classification was changed from Chief Engineer AA to Chief Maintenance Engineer AA, and his monthly salary was reduced from $5,406 per month to $3,460.78 per month, changes reflecting his transfer to "temporary winterwork classification." Rather than sleeping aboard the vessel, plaintiff supervised lay-up work during the day and returned to his home each night. During the five-day winter work week, non-crew personnel came aboard the ship to perform various jobs. The ship itself had lost her classification with the United States Coast Guard and was not permitted to sail again before passing a fit-out inspection. Moreover, the vessel's main engine was disassembled and was not operable at the time of plaintiff's alleged injury. During the period of winter lay-up, only one navigating officer was aboard the ship, and he was almost entirely engaged in supervising repair work.

## II.

■ Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. A district court's grant of summary judgment is reviewed de novo. *Pinney Dock and Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). In its review, this court views all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

■ The moving party carries the burden in showing that no genuine issue of material fact exists. *Id.* Yet, in the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings, but must come forward with some proba-

tive evidence to support its claim and make it necessary to resolve the differences at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The dispute must be genuine, and the facts must be such that, if they were proven at trial, a reasonable jury could return a verdict for the nonmoving party. *60 Ivy St. Corp.*, 822 F.2d at 1435. If the disputed evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted).

■ The district court granted summary judgment in favor of defendants because, based on the undisputed facts, it found that "no reasonable jury could find that the SS Henry Ford II (sic) was 'in navigation' on February 11, 1987." The "in navigation" requirement comes from this court's definition of a seaman.

Although the [Jones] Act does not define the term 'seaman', the Sixth Circuit has stated that in determining whether a particular employee is a 'seaman' the following test shall be applied: (1) is the vessel in navigation, (2) does the employee have a more or less permanent connection with the vessel, and (3) was the employee on board the vessel primarily in aid of navigation? [1]

*Searcy v. E.T. Slider, Inc.*, 679 F.2d 614, 616 (6th Cir.1982). Under this court's test, a person must be more or less permanently connected with a vessel in navigation in order to fit the definition of a seaman within the Jones Act.

As earlier indicated, the district court found the following undisputed facts:

1. The third element in the definition of a seaman was rejected in *McDermott Int'l, Inc. v. Wilander*, —— U.S. ——, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). See *infra*.

(1) The [2–11–87] injury occurred during winter lay-up;

(2) The ship was not sailing and was in fact secured with special "winter lines";

(3) The full crew was not stationed aboard the ship. Only engineers and persons engaged in winter repair work were retained during the winter lay-up;

(4) The plaintiff's classification had changed from Chief Engineer AA to Chief Maintenance Engineer, and his normal sailing season classification had been changed to "temporary winter work classification."

(5) The plaintiff was engaged in winter lay-up mechanical repair work at the time of his injury, either preparing the vessel for winter or readying it for the following season;

(6) The plaintiff did not sleep aboard the vessel during the winter lay-up period;

(7) The vessel's main engine had been completely "torn down" and was not in operable condition at the time of the incident;

(8) The vessel had lost her classification with the U.S. Coast Guard, and could not regain it without an inspection.

From these undisputed facts, the district court concluded that there were no genuine issues of material fact in this case, and it determined that the ship was not in navigation at the time of plaintiff's alleged injury on February 11, 1987. Accordingly, it held that plaintiff Boyd was not a seaman within the meaning of the Jones Act.

The district court relied primarily on *Antus v. Interocean S.S. Co.*, 108 F.2d 185 (6th Cir.1939), and *Nelson v. Greene Line Steamers*, 255 F.2d 31 (6th Cir.), *cert. denied*, 358 U.S. 867, 79 S.Ct. 100, 3 L.Ed.2d 100 (1958). In *Antus*, a case factually similar to this case, the ship in question

> had been withdrawn from navigation. All of the navigating officers and deck crew of the vessel had departed for the winter excepting certain members of the engineer's department, including appellant. All of these men had formerly been members of the crew, but had been paid off after the last trip and had remained on board, in accord with the general practice on the lakes, for the purpose of laying up the vessel. During the navigation season they had been paid on a monthly basis, but in the laying-up work they were paid by the hour, the rate of compensation, however being the same.

*Antus*, 108 F.2d at 186. The district court had dismissed the plaintiff's action under the Jones Act, and this court affirmed for the reason that,

> [w]hile the work done had direct relation to navigation, it neither was performed *during the navigation season,* nor was it even preparatory to navigation. Appellant was laying up the engine and packing the pumps and seacocks so that they would not freeze. He was taking bolts out of the piston-heads, an operation which was never done during navigation. It would have taken from four to eight hours to put the engines together again to operate. The vessel, while not consigned to a ship's graveyard, was tied up to the piles. Instead of doing this work in preparation for navigation, the men were preparing the vessel for winter quarters. Appellant was not subjected to any maritime hazards.

*Id.* at 187 (emphasis added).

In *Desper v. Starved Rock Ferry Co.*, 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205 (1952), the Supreme Court followed *Antus* and held that a crew member, reemployed as a laborer for the winter to perform seasonal repair work, was not a seaman within the meaning of the Jones Act because all the vessels upon which he had served had been "laid up for the winter" at the time of his accident. *Id.*, 342 U.S. at 191, 72 S.Ct. at 218–19. The Court cited *Antus* for the proposition that "one who had been a member of a ship's crew and was injured while preparing it for winter quarters could not maintain a Jones Act suit for his injuries...." *Id.* Although neither *Antus* nor *Desper* concentrated on the "in navigation" requirement, both courts emphasized the fact that no vessel was engaged in navigation when the injuries occurred because the vessels had been laid up for the winter. Thus, although

both cases actually focused on the kind of work being performed by the plaintiff at the time of his injury or death, *Antus* and *Desper* established that a crew member who is specially reemployed to perform winter lay-up services on a vessel is not a seaman for Jones Act purposes.

This view was reenforced in *Nelson v. Greene Line Steamers*, 255 F.2d 31 (6th Cir.), *cert. denied*, 358 U.S. 867, 79 S.Ct. 100, 3 L.Ed.2d 100 (1958), a case in which this court affirmed a district court's findings that the Delta Queen had been tied up for the winter at a wharf in Cincinnati, Ohio, and was not engaged in navigation at the time of the plaintiff's intestate's death. Plaintiff had been a crew member during the preceding sailing season, but he was reemployed during the winter as a laborer to make necessary repairs to the ship for the following season. During this lay-up period, the full crew was not aboard, and such crewmen as were working were not required to sleep on the ship. This court refused to find clearly erroneous the district court's findings that the Delta Queen was not in navigation and that the plaintiff, therefore, was not a seaman.

Together the foregoing cases may be considered to have established a special status in which a vessel is laid up for refitting during the winter months. In *Bodden v. Coordinated Caribbean Transp., Inc.*, 369 F.2d 273, 275 (5th Cir. 1966), the Fifth Circuit recognized winter quarters as such a special status in which a ship would not be considered to be in navigation.

> On the other hand, where a vessel is laid up for the winter, the crew having been discharged, and the boat is being secured by workmen paid at an hourly rate and living ashore, the ship is no longer in navigation. The same is true where the vessel is tied up for the winter with only a maintenance crew, and claimant, a crew member during the season, is retained as a laborer on an hourly basis and is not required to live aboard the vessel.

*Id.* (citation omitted) (citing *Nelson* and *Antus*).

Although plaintiff James Boyd does not dispute the underlying facts and, moreover, concedes in his brief that the vessel, during winter lay-up, "did not have a *prescheduled* itinerary of necessary sailing missions," Brief of Appellant at 10–11, he contends that the vessel was in navigation at the time of his injury and that the district court took too narrow a view of the "in navigation" component of the definition of a seaman. He argues that courts should give a liberal interpretation to remedial legislation such as the Jones Act, *Luckett v. Continental Engineering Co.*, 649 F.2d 441, 443–44 (6th Cir.1981), and contends that because our case, *Noack v. American Steamship Co.*, 491 F.2d 937, 939 (6th Cir. 1974), holds that "the question of 'in navigation' is properly one of fact ...," the district court should not have granted summary judgment.

The facts in *Noack* are similar to the facts in this case. In *Noack*, the plaintiff had been a crewman of the vessel in question for twenty-five years and during the sailing seasons was employed as "a wiper"; *i.e.*, one who wipes up grease and oil from the decks of a vessel. He was injured while helping to clean the bilges during winter lay-up, and a jury awarded him a substantial verdict after finding by special interrogatory that the vessel in question was in navigation. This court upheld the jury verdict in *Noack* stating:

> It is of course true that in the strict sense the lay-up of this Great Lakes vessel effectively took the vessel *out of navigation*. However, it is also true that the routine of lay-up had been established because the vessels could not operate in the ice and cold. Barring such weather obstacles to a year-round sailing season, it appears that many tasks typically accomplished during the lay-up period could well be accomplished at sea without interruption to regular scheduling for major repairs. Thus under the circumstances it seems clear that the lay-up and fit-out activities are complete parts of the total Great Lakes sailing season. Crew members perform the lay-up and fit-out tasks under the same labor contract that applies during the sailing

season. The same discipline and functional management also applies. In view of these facts, *we cannot say that there was clear error* in the District Court's finding ...

Id. at 940 (emphasis added).

In reaching this conclusion, this court found *Butler v. Whiteman*, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754 (1958), to be controlling. In *Butler*, a brief per curiam, the Supreme Court reversed and remanded a case after finding that the "evidence presented an evidentiary basis for jury findings as to (1) whether or not the tug G.W. Whiteman was in navigation...." *Id.* The majority did not mention the facts of the case or explain its reasoning, but the dissent recited that the tug on which the injury occurred was inoperable, that it had been withdrawn from navigation, that it was moored up, that it had neither captain nor crew, that it was undergoing rehabilitation preparatory to a Coast Guard inspection, and that the decedent in the case was employed as a laborer doing odd jobs around the wharf where the tug was moored. *Butler* thus seems to hold that there are virtually no circumstances under which a trial court would be justified in directing a verdict on the question of whether or not a vessel was in navigation. It is not surprising, therefore, that this court in *Noack*, confronted with *Butler* and with a standing jury verdict based on special interrogatories, held that there was no clear error in the trial despite the fact that "in the strict sense the ... vessel [was] out of navigation." *Noack*, 491 F.2d at 940.

In the present case we are not faced with the same situation that was before this court in *Noack*. First, the case comes to this court on appeal from the granting of defendants' motion for summary judgment, not from a jury verdict in favor of the plaintiffs. Second, a recent decision of the Supreme Court has weakened *Butler*, and thus *Noack*, which followed *Butler*.

In *McDermott Int'l, Inc. v. Wilander*, —— U.S. ——, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991), the Court reviewed a Fifth Circuit case and affirmed that circuit in its view that one need not *aid in the naviga-* *tion* of a vessel in order to qualify as a seaman under the Jones Act. The Supreme Court has thus rejected the third factor of the test used in *Searcy v. E.T. Slider, Inc.*, 679 F.2d 614, 616 (6th Cir. 1982), and has approved the Fifth Circuit's test from *Offshore Co. v. Robison*, 266 F.2d 769, 779 (5th Cir.1959), a test which asks two questions:

(1) [I]f there is evidence that the injured workman was assigned permanently to a vessel ... or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or *during anchorage for its future trips.*

(Emphasis added).

The Supreme Court in *McDermott* considered only the narrow question of whether a person must *aid in the navigation* of a vessel to be considered a seaman under the Jones Act. It did not purport to define a "vessel in navigation" or attempt any discussion of the "in navigation" concept. However, its opinion implies that the concept is still a viable component of the test used to determine who is a seaman.

We believe the better rule is to define 'master or member of a crew' under the LHWCA, and therefore 'seaman' under the Jones Act, solely in terms of the employee's connection to a *vessel in navigation.*

....

The key to seaman status is employment-related connection to a *vessel in navigation.*

*McDermott*, 111 S.Ct. at 817 (emphasis added).

Although the Supreme Court adopted the test set out by the Fifth Circuit in *Robison*, this does not aid the plaintiffs in obtaining a reversal in this court because, as has been pointed out, the Supreme Court did not abandon the "in navigation" requirement. Moreover, there is little in *Robison* to suggest abandonment of the require-

ment. First, the "in navigation" requirement was not discussed in the case. The language "during its movement or during anchorage for its future trips" does not distinguish between a vessel temporarily anchored while on a voyage and a ship, such as the MS. HENRY FORD II, without crew, without sailing certificates, without operable engines, and without a sailing itinerary or current sailing mission. Thus, neither *Robison* nor *McDermott* supports plaintiffs' contentions that the "in navigation" requirement has been weakened or abandoned. Because the district court's resolution of this case turned only on the issue of the ship's status at the time of plaintiff's injury, and because this issue is independent of the issues discussed in *Robison* and *McDermott*—whether or not plaintiffs were members of a crew—this court need not decide in this case whether to replace entirely *Searcy's* definition of seaman under the Jones Act.

*McDermott* also provides important guidance for the resolution of this case insofar as it specifically approves the use of summary judgment in Jones Act cases and therefore relaxes what seemed to be a rigid rule in *Butler*, a case that had been read to hold that jury determinations were required in all aspects of Jones Act cases. Noting that some of its older cases had said that seaman status under the Jones Act was a question of fact for the jury, the Court in *McDermott* stated that the question of who is a seaman is best characterized as a mixed question of law and fact and that, because seaman is a statutory term, its definition is a question of law. It went on to state:

> The jury finds the facts and, in these cases, applies the legal standard, but the court must not abdicate its duty to determine if there is a reasonable basis to support the jury's conclusion.... The inquiry into seaman status is of necessity fact-specific; it will depend on the nature of the vessel, and the employee's precise relation to it. *Nonetheless, summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion.*

*Id.* 111 S.Ct. at 818 (citations omitted) (emphasis added).

In this case, the facts pertinent to the determination of whether the MS. HENRY FORD II was in navigation were undisputed, and the question of whether the ship was in navigation was therefore appropriate for summary judgment, especially so after the Supreme Court's trilogy in 1986 dealing with summary judgments. This court's cases, as the district court correctly noted, have held that a ship in winter lay-up without its regular crew, without Coast Guard certification to sail, and without its engines in operating condition, is not in navigation. The cases cited by plaintiffs provide no reason for this court to change its view that a winter lay-up of the kind described in this case takes a vessel out of navigation and renders those employed upon her ineligible as non-seamen to proceed under the Jones Act.

### III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.