7 F.3d 237
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Alex F. YOUNG, Plaintiff-Appellant,
v.
CITY OF LOUISVILLE and Doug Hamilton, Defendants-Appellees.
 No. 92-6261.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1993.
 
 Before: MILBURN, RYAN, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Alex F. Young appeals the district court's grant of summary judgment to the defendants-appellees, City of Louisville and Doug Hamilton, police chief of the Louisville, Kentucky, Police Department, in this civil rights action, which plaintiff brought under 42 U.S.C. § 1983 claiming that the defendants violated plaintiff's right to freedom of association as guaranteed by the First and Fourteenth Amendments to the United States Constitution. The district court granted summary judgment to defendants because plaintiff failed to present any evidence from which a reasonable jury could find that his membership in the Ku Klux Klan was a substantial or motivating factor in defendants' decision not to hire him. Because we conclude that the grant of summary judgment was proper, we affirm.
 
 I.
 A.
 
 2
 Plaintiff was employed as a police officer with the Jefferson County (Kentucky) Police Department ("JCPD") from July 1972 until November 1985. On November 21, 1985, JCPD discharged plaintiff on the grounds that plaintiff had (1) violated a departmental regulation prohibiting conduct unbecoming an officer by distributing approximately 10,000 pieces of hate literature, (2) violated a departmental policy requiring truthfulness by lying to his superior officer when he claimed that he had discontinued his membership in the Ku Klux Klan, and (3) violated a departmental policy regarding the sale of tickets by police officers when he sold raffle tickets without permission of the police chief.[1] 
 
 
 3
 Approximately three years later, plaintiff applied for a position as a police recruit with defendant City of Louisville by making an application with the Louisville Civil Service Board. Plaintiff passed a written examination in February 1989, and the Louisville Civil Service Board placed him on a waiting list. In May 1990, the Civil Service Board referred plaintiff, along with 115 other applicants, to the Louisville Police Department ("LPD") to be considered for hiring.
 
 
 4
 Once an applicant was referred to LPD, the application process continues through the following steps: personal interview, polygraph test, psychological evaluation, background investigation, second interview, and medical examination. On May 21, 1990, defendant City of Louisville received an "employment verification" from the JCPD which indicated that JCPD had terminated plaintiff's employment in November 1985. On July 3, 1990, plaintiff took and passed his initial personal interview. On July 11, plaintiff took the required polygraph examination, and the next day Lt. Col. Sherman Anderson, an Assistant Chief of LPD, decided to stop processing plaintiff's employment application. In a telephone conversation on July 18, Anderson informed plaintiff that he was no longer being considered for a police recruit position because of his 1985 discharge from JCPD. In September 1990, the Civil Service Board officially notified plaintiff that he had not been selected as a recruit.
 
 
 5
 Plaintiff filed this civil rights action in the United States District Court for the Western District of Kentucky pursuant to 42 U.S.C. § 1983, claiming that the defendants violated his right to freedom of association as guaranteed by the First and Fourteenth Amendments to the United States Constitution. Plaintiff alleged that defendants stopped considering his application to be a police recruit because of his past membership in the Ku Klux Klan. Defendants, on the other hand, claimed that they stopped considering plaintiff's application because he had been fired by another police department for misconduct. After discovery by both parties, the district court granted defendants' motion for summary judgment because plaintiff failed to present any evidence from which a reasonable jury could find that his memberhsip in the Ku Klux Klan was a substantial or motivating factor in defendants' decision not to hire him. Plaintiff then filed a motion to alter or amend the judgment, which the district court denied. This timely appeal followed.
 
 II.
 A.
 
 6
 This court reviews a district court's grant of summary judgment de novo. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). In its review, this court must view all facts and inferences in the light most favorable to the nonmoving party. Boyd v. Ford Motor Co., 948 F.2d 283, 285 (6th Cir.1991), cert. denied, 112 S.Ct. 1481 (1992).
 
 
 7
 The party seeking summary judgment bears the initial burden of showing the district court that there is an absence of a genuine dispute over any material fact. Celotex Corp. v. Catrett 477 U.S. 317, 323 (1986). This burden "may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Id. at 325. In order to defeat the motion for summary judgment after the movant has carried its initial burden, the nonmoving party cannot respond by merely resting on the pleadings, but rather the nonmoving party must present some "specific facts showing that there is a genuine issue for trial." Id. at 324 (quoting Fed.R.Civ.Proc. 56(e)).
 
 
 8
 The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "If the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." Id. at 249-50 (citations omitted). Furthermore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Matsushita, 475 U.S. at 587. A factual dispute between the parties will preclude summary judgment only if the disputed facts are material to the case. Anderson, 477 U.S. at 247-48. Material facts are only those facts that might affect the outcome of the suit under the governing substantive law. Id.
 
 B.
 
 9
 Plaintiff argues that defendants denied his First Amendment right to freedom of association because their decision not to hire him was based on his past membership in the Ku Klux Klan. In order to prevail on this theory, plaintiff must show that his membership in the Ku Klux Klan was constitutionally protected and that this membership was a substantial or motivating factor in the defendants' decision not to hire him. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Adkins v. Board of Educ., 982 F.2d 952, 957 (6th Cir.1993); Conklin v. Lovely, 834 F.2d 543, 546 (6th Cir.1987).
 
 
 10
 Defendants, by the use of supporting depositions, showed that their reason for refusing to hire plaintiff was not his membership in the Ku Klux Klan but the fact that he had been discharged from another police department for misconduct. Thus, defendants carried their initial summary judgment burden, and the burden shifted to plaintiff to designate specific facts demonstrating that there was a genuine issue about whether or not his membership in the Ku Klux Klan was a motivating factor in the defendants' decision.
 
 
 11
 Plaintiff cannot carry this burden because he cannot point to any significantly probative evidence indicating that a motivating reason defendants did not hire him was his KKK affiliation. All of the deposition testimony indicates that plaintiff's past discharge was the reason he was not hired. Lt. Col. Sherman Anderson, the police official who decided to remove plaintiff from the application list and the person who informed plaintiff of that decision, stated in his deposition that this decision was based on the fact that plaintiff had been discharged by JCPD for untruthfulness and conduct unbecoming a police officer. In addition, when Anderson informed plaintiff of the decision, he cited plaintiff's problems at JCPD as the reason. Furthermore, Katherine Mayberry, the records keeper for the LPD, testified that the reason Anderson gave her for removing plaintiff from the list of applicants, and the reason she indicated on a form that she regularly kept to document an applicant's removal from the list ("removal form"), was that plaintiff had been fired from JCPD.
 
 
 12
 Moreover, defendants' supporting depositions showed that no one who had been previously fired by another police force had ever been hired by LPD. Capt. Richard Dotson, the Louisville Police Chief at the time of the decision not to hire plaintiff, testified that he could not recall a single applicant that had been hired during his 31 years of experience with the LPD who had been previously dismissed from another police department. Likewise, Detective George Fertig, who often did background investigations on applicants, could not recall the hiring by LPD of any officer fired by another police force.
 
 
 13
 In the face of this uncontradicted testimony, plaintiff points to several facts which he argues reveal a genuine issue of material fact concerning defendants' motivation in denying his application. Plaintiff's arguments, however, do not establish more than a scintilla of evidence in his favor or raise more than a metaphysical doubt as to the material facts. At most he points to evidence that is merely colorable.
 
 
 14
 Plaintiff argues that a genuine issue of material fact remains about the existence of defendants' alleged automatic disqualification policy for applicants who have been previously fired. First, plaintiff points to what he sees as a contradiction in Anderson's and Dotson's deposition testimony concerning the existence of such a policy. Anderson testified that it "would almost be fair" to say that the LPD had a general policy of not hiring anyone who had been dismissed from another police department. Anderson went on to explain that "[a] lot of times from smaller departments, it would be rather insignificant why they were dismissed, and we might consider it; the larger ones, it's usually people that's been around, especially as long as Mr. Young has and then been dismissed, there's usually some rather serious charges." J.A. 113. Dotson, on the other hand, testified that it was not his understanding that "a discharge or a firing from another major police department would be an automatic disqualification as a recruit applicant for the Louisville Police Department...." J.A. 121. In addition to this seemingly contradictory testimony, plaintiff argues that, if there were such a policy, defendants would have taken him off the application list long before July 12 because defendants knew at least by May 21, the day they received the "employment verification" from JCPD, that plaintiff had been previously discharged.
 
 
 15
 Although there might be some dispute as to whether there was a formal policy of not hiring anyone with a prior discharge,[2] the outcome of that dispute is immaterial. Although the existence of such a policy would be more evidence that defendants did not use plaintiff's KKK membership as a motivating factor in refusing to hire plaintiff, the absence of such a policy does not raise the opposite inference that defendants did use plaintiff's KKK membership in making the decision. Whether or not there was a policy giving conclusive effect to a prior discharge, it was certainly proper for defendants to base their decision on plaintiff's prior discharge.
 
 
 16
 Plaintiff's next argument, although logical, is not substantiated in the record. Plaintiff argues that LPD did not follow its standard procedure in processing plaintiff's application. The Supreme Court, in a racial discrimination case based on the Equal Protection Clause of the Fourteenth Amendment, has recognized that "[d]epartures from the normal procedural sequence also might afford evidence that improper purposes are playing a role." Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 267 (1977). Plaintiff contends that it was the normal procedure of the LPD to investigate the circumstances of an applicant's previous discharge, that LPD never investigated the circumstances of his dismissal from JCPD, and that based on Arlington Heights this is evidence of improper motivation.
 
 
 17
 Plaintiff's argument, however, relies on the false premise that it was the department's standard procedure to investigate the reasons for a previous discharge in cases like his. Although Dotson testified that, if an applicant had been previously discharged, "the discharge would raise a flag and we would look at the circumstances, the reasons," J.A. 120, he went on to testify that "[i]f the reasons were already known and the documentation was there to review ..." it would not be necessary to conduct an investigation, J.A. 123. Similarly, Anderson testified that if the reasons were well known, they would not investigate because there would be "no sense in going through the manpower that would need to be expended to prove something that was already a fact." J.A. 114.
 
 
 18
 The reasons for plaintiff's dismissal from JCPD were well known. Anderson, Dotson, and defendant Hamilton all testified that they knew about plaintiff's discharge from the extensive television and newspaper coverage in 1985. Even plaintiff acknowledged there was publicity surrounding his discharge from the Jefferson County Police. Furthermore, Anderson, the official who decided to take plaintiff off the applicant list, testified that he knew the details of plaintiff's discharge:
 
 
 19
 If I remember correctly, it was about--my recollection, there were about five charges that the county police had brought against him, some of which were not sustained and others were. I remember improper use of NCIC for an example; I don't believe that was sustained. Passing out hate literature, and I don't believe that one was sustained. But lying to the commanding officer was sustained, conduct unbecoming an officer was sustained, and I believe selling raffle tickets without permission of the chief, which was sustained.
 
 
 20
 J.A. 110-11.
 
 
 21
 Focusing on Dotson's testimony that LPD would not investigate if the reasons for an applicant's prior discharge were well known and the documentation was there to review, plaintiff argues that there could not have been any such documentation to review because the LPD did not make an investigation. This argument is uncompelling not only because of its circular reasoning but also because there was documentation. On May 21, 1990, defendants received the "employment verification" from JCPD, which indicated that plaintiff had been discharged, and this was a month and a half before plaintiff was taken off the application list. Furthermore, plaintiff detailed the reasons for his discharge to Lt. William Edward Payton, the official who took plaintiff's polygraph statement. Payton wrote these reasons down on the polygraph questionnaire, and Anderson reviewed this questionnaire before deciding to remove plaintiff from the application list. Appellant's Brief at 5.
 
 
 22
 Thus, in cases like plaintiff's, where the reasons for a discharge were well known, the LPD did not have an established procedure of investigating the discharge further. Therefore, the Arlington Heights consideration, which might view evidence of deviation from standard procedures as evidence of improper motivation, is not implicated.
 
 
 23
 Plaintiff also argues that a genuine issue of illegal motivation arises from the fact that "ex-KKK member" was written on the "removal form." Plaintiff contends that "among the reasons listed in Ms. Mayberry's file as to why the Plaintiff-Appellant was no longer processed, was 'ex-KKK member' (Deposition of Mayberry, p. 10, R 17)." Appellant's Brief at 21 (emphasis added). However, Mayberry's deposition simply does not say what plaintiff contends. Rather it shows only that "ex-KKK member" was grouped with "improper use of NCIC," "conduct unbecoming a police officer," and "untruthfulness" as things plaintiff admitted to in the polygraph test. J.A. 134. In fact, in response to the question concerning what reasons Mayberry had listed on the removal form for plaintiff's being removed from the application list, she testified: "I have fired from JCPD, improper use of NCIC, conduct unbecoming a police officer and untruthfulness." R. 17, Deposition of Mayberry at 9.
 
 
 24
 Another fact plaintiff points to in his quest for a genuine issue for trial is that everyone involved in the case knew that plaintiff's prior discharge was linked to his association with the Ku Klux Klan. Plaintiff, however, fails to present any arguments or authorities to demonstrate that this knowledge standing alone is sufficient to establish a causal link between his association with the Ku Klux Klan and the adverse decision on his application. The mere knowledge of the decisionmakers does not warrant an inference that the knowledge was a substantial or motivating factor for their decision, especially where, as in this case, the decisionmakers have articulated an unrefuted legitimate reason for their decision.
 
 
 25
 The final facts that plaintiff points to concern the polygraph examination. The consent form that plaintiff signed before taking the polygraph test stated: "I will be asked only questions that relate to my overall qualifications for employment with any history I have of commission of a serious crime, arrests, convictions, lying in connection with applying for this job, along with questions concerning my employment history." J.A. 147. One of the questions that Payton asked plaintiff during the polygraph test was: "Are you holding back any information about any affiliation or membership in a hate organization?" J.A. 154. Also, before administering the polygraph test, Payton questioned plaintiff about his history with the Ku Klux Klan. Plaintiff argues that because the consent form said the questions would relate to job qualifications and one of the questions concerned his affiliation with hate organizations, nonaffiliation with hate groups had to be a qualification for the job. Therefore, he argues that LPD used his affiliation with Ku Klux Klan as a motivating factor in its decision not to hire him.
 
 
 26
 The question about hate group affiliations does not, as plaintiff contends, indicate improper motivation. It was asked along with many questions about criminal conduct and personal characteristics that might bear on the ability of a police officer to perform his job. Along with the hate group question, plaintiff was asked whether he was holding back information about his past involvement in illegal sales or use of drugs, excessive drinking, previous firings, previous arrests, theft, illegal sex acts, or hate crimes. Many hate groups commit violent crimes, and active participation in such violent hate groups would not be constitutionally protected. See McMullen v. Carson, 754 F.2d 936 (11th Cir.1985). The question concerning hate groups was broad enough to elicit information about participation in unlawful, as well as lawful, hate groups. Therefore, the fact that plaintiff answered the question with information (membership in a lawful organization) that LPD could not constitutionally use as a motivating factor does not mean the question shows illegal motivation. The answer could have revealed information (participation in a violent, unlawful organization) that LPD could have constitutionally used.
 
 
 27
 As the district court found, plaintiff simply has failed to show any significantly probative facts indicating that there was a causal link between his Klan membership and LPD's hiring decision. Because plaintiff has not carried his burden of presenting specific facts showing a genuine issue about defendants' motivation, an element essential to plaintiff's case, the grant of summary judgment was proper. We need not decide whether plaintiff's membership in the Ku Klux Klan was constitutionally protected because plaintiff has failed to carry his summary judgment burden of showing that there was a genuine issue of material fact concerning defendants' use of the membership as a substantial factor for its decision.
 
 III.
 
 28
 For the reasons stated, the district court's grant of summary judgment to the defendants is AFFIRMED.
 
 
 
 [1]
 Plaintiff appealed his termination to the Jefferson County Police Merit Board, but the Merit Board upheld the termination in its entirety. Plaintiff then appealed the Merit Board's decision to the Jefferson County Circuit Court but voluntarily dismissed that action with prejudice on July 21, 1986. On that same day, plaintiff commenced an action in the United States District Court for the Western District of Kentucky claiming that the JCPD had discharged him in violation of his constitutional rights to freedom of speech and association. The district court dismissed that action in November 1986 on the grounds that plaintiff's voluntary dismissal of the state court case with prejudice barred any subsequent action in federal court based on the same allegations. That order was not appealed
 
 
 [2]
 Anderson's and Dotson's testimony can also be viewed as uncontradictory. Anderson testified that it was only "almost fair" to say such a policy existed, whereas Dotson testified it was not his understanding that a prior discharge would be an automatic disqualification. Reading both depositions together, it would be a fair assessment to conclude that although the Louisville Police Department did not have a formal policy of excluding applicants who had been discharged from other police departments, it did have a de facto "policy." In fact, Dotson also testified that in his 31 years with the Louisville Police Department he could not remember any previously discharged applicant who had been hired