78 F.3d 584
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Michael L. HILLIARD, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 94-2212.
 United States Court of Appeals, Sixth Circuit.
 Feb. 22, 1996.
 
 Before: BOGGS and DAUGHTREY, Circuit Judges; and McKEAGUE, District Judge.*
 PER CURIAM.
 
 
 1
 The Secretary of Health and Human Services denied social security benefits to Michael L. Hilliard. The district court, adopting the recommendations of a magistrate judge, affirmed this denial. Hilliard appeals, and we affirm.
 
 
 2
 * Michael Hilliard is a 49-year-old high school graduate. He has worked as a machinery electrician and rebuilder, as a clerk at a party store, as a truck driver, as a car salesman, and as the owner of an archery shop. He last worked as an electrician and rebuilder in 1989.
 
 
 3
 Hilliard suffers from degenerative arthritis, a herniated disk of the spine, glaucoma, diabetes myelitis (insulin-dependent), impotence, and heart disease caused by his "brittle" diabetes, which causes him to take nitroglycerine pills daily. Hilliard also has had his patellas (knee caps) surgically removed after he was injured in an automobile accident. Hilliard's hearing is 60% of normal. There is also some evidence that Hilliard has peripheral neuropathy, nerve root injury, degenerative disc disease of the lumbosacral spine, and coronary artery disease. He takes the prescription medicines Motrin, Lopid, and Cardizem.
 
 
 4
 Hilliard applied for social security disability benefits, including supplemental security income, on March 21, 1991. An ALJ at the Social Security Administration (SSA) held a hearing to determine Hilliard's eligibility on August 5, 1992. On December 14, 1992 Hilliard's application for benefits was denied. He applied for review to the Appeals Council of the SSA, which denied his application on May 24, 1993. Hilliard then filed a complaint in the United States District Court for the Eastern District of Michigan.
 
 
 5
 The case was referred to a magistrate, who recommended granting the Secretary's motion for summary judgment, thus affirming the denial of Hilliard's application for benefits. In the magistrate's review of the records Hilliard submitted to support his claim, she noted that "[c]hiropractor's [sic ] reports are not considered to be acceptable sources of medical evidence for medical impairments. 20 C.F.R. § 404.1513." Hilliard objected to the magistrate's recommendation by referring to arguments made in his motion for summary judgment. He also highlighted three other objections, however. Hilliard's counsel probably decided to incorporate certain objections by reference in an effort to avoid a five-page limit the magistrate had imposed on any objections. The district court accepted the magistrate's recommendation to deny benefits to Hilliard and found that Hilliard had made only a general objection to the magistrate's report, which waived his right to appeal on certain issues. Hilliard filed a timely appeal to this court.
 
 
 6
 At the hearing before the ALJ, Hilliard testified that he has constant low back pain, which is worse on his right side and radiates into his legs. If he exerts himself, such as by climbing stairs, he claims to have chest pain that radiates into his arms. Hilliard testified he cannot grasp things with his hands very well, if he has to do so repetitively.[1]
 
 
 7
 Hilliard testified that his daily routine was to rise at 7 a.m. His wife then washes him. He then makes himself breakfast and tries to sit for a while. He claims he cannot sit for longer than approximately one half-hour or he stiffens up and needs help to regain his feet. After breakfast, he watches television, takes out his dogs, and occasionally visits neighbors. In the morning he testified he walks about 200 to 400 feet, but if he tries to walk for longer, he gets pain in his back and legs. He cannot drive long distances.
 
 
 8
 Hilliard claims to have abandoned many of his hobbies, including fishing, scuba diving, and flying. He testified that currently he is only able to clean guns, although it takes him all day to finish what would have normally been a two-hour job. He does no housework or yard work. Hilliard claims he cannot sleep for more than 1-2 hours at a stretch, because he wakes up with pain.
 
 
 9
 Medical evidence in the record included two residual functional capacity (RFC) assessments by Drs. Herschel J. Wells and B.A. Farvar. Dr. Wells concluded that Hilliard could lift and carry up to ten pounds frequently and twenty pounds occasionally. Hilliard could stand, walk, or sit for about six hours in an eight-hour day, and he could push or pull without limitation. He also found that Hilliard could occasionally climb, balance, stoop, kneel, crouch, and crawl. No other manipulative, visual, communicative or environmental limitations were established. Dr. Farvar concluded that Hilliard could stand or walk for a total of at least two hours and could sit for about two hours in an eight-hour work day. He found that Hilliard had only a limited ability to use foot controls. He also found that Hilliard could occasionally climb, balance, stoop, kneel, crouch, and crawl, and that Hilliard suffered under no other manipulative, visual, communicative, or environmental limitations. Two different progress reports from a Veterans Administration Hospital indicated that Hilliard was employable and that in 1990 he had enrolled in prison guard training that would ultimately require him to run a mile in eight minutes.
 
 
 10
 A vocational expert (VE) at the SSA hearing testified that someone of Hilliard's age, education, and past work experience who had the RFC to do sedentary work with an option to sit or stand due to a back condition would be able to find a job. Examples offered, and their availability in the region where Hilliard lives, were cashier 55,300, security monitor 6,000, bottle inspector 1,600, ticket seller 3,100, order clerk 18,000, packager 9,700, and telephone order clerk 11,600, for a total of 96,300 available jobs. The VE also testified that she had seen handicapped or impaired persons performing these jobs. On the other hand, the VE testified that if Hilliard's allegations of pain and other subjective limitations were credited, no jobs would exist, because of his constant back pain, regular chest pain, and requirements for naps during the day. Cross-examination by Hilliard's counsel revealed that his vision problems would affect the bottle inspector position, and perhaps the security monitor position. The cashier and perhaps the ticket seller position would be affected by his hearing loss. Finally, his repetitive grasping problem would affect the cashier position, the ticket seller position and the packager position.
 
 
 11
 The ALJ reached the following conclusions after the hearing:
 
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 4. The claimant's testimony has not been found fully creditable to the extent that it indicated that he could not perform those jobs enumerated by the vocational expert at the hearing.
 
 
 15
 5. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for work involving lifting more than 10 pounds and prolonged standing and walking and also the claimant would need a sit/stand option (20 CFR 404.1545 and 416.945).
 
 
 16
 6. The claimant is unable to perform his past relevant work as a machine operator, clerk, driver, sales person, and store owner.
 
 
 17
 7. The claimant's residual functional capacity for the full range of sedentary work is reduced by the addition of a sit/stand option.
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 11. Based on an exertional capacity for sedentary work and the claimant's age, education and work experience, section 404.1569 of Regulations No. 4 and section 416.969 of Regulations No. 16 and Rules 201.21 and 201.28, Table No. 1, of Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."
 
 
 21
 12. Although the claimant's additional nonexertional limitations do not allow to perform [sic ] the full range of sedentary work, using the above-cited rules as a framework for decisionmaking, there are a significant number of jobs in the national economy which could perform [sic ].[2] Examples of such jobs are: cashier, security monitor, bottle inspector, ticket seller, order clerk, packager and telephone order clerk. Such jobs exist in significant numbers in the claimant's region of the country.
 
 
 22
 13. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).
 
 II. OBJECTIONS TO THE MAGISTRATE'S REPORT
 
 23
 Objections to a magistrate's report that are only general waive the right to appeal--the social security claimant must make specific objections to the magistrate's report in order to inform the district court of the locus of dispute, so that judicial resources may be conserved. Howard v. Secretary of HHS, 932 F.2d 505, 508-09 (6th Cir.1991). Here, this requirement was met because Hilliard did not make merely general objections, or simply extract irrelevant objections from a form book, as in Howard. Rather, he used the traditional litigation tactic of incorporating additional material into a pleading by reference. Thus, Hilliard did not waive his right to appeal under Howard. Hilliard may have violated the spirit of the magistrate's order to keep objections under five pages without special permission to do otherwise from the district court, however. Because the district court did not consider this argument, and the Secretary did not present it on appeal, we decline to address it here. Boyd v. Ford Motor Co., 948 F.2d 283, 284 (6th Cir.1991). Hilliard's objections were sufficient to permit his appeal to this court.
 
 III. RESIDUAL FUNCTIONAL CAPACITY
 
 24
 After the SSA's Appeals Council denied Hilliard's request to review the ALJ's decision, this decision became the final and reviewable decision of the Secretary of HHS. 20 C.F.R. §§ 404.981, 422.210(a). See 42 U.S.C. § 405(h) (finality of Secretary's decision). This court must review the Secretary's determination as to Hilliard's disability, and hence eligibility for benefits, under the substantial evidence test. "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind should accept as adequate to support a conclusion." Bradley v. Secretary of HHS, 862 F.2d 1224, 1228 (6th Cir.1988) (per curiam) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).
 
 
 25
 There is adequate relevant evidence in the record to support the ALJ's determination that Hilliard retains the RFC to perform sedentary work with a sit/stand option. As significant numbers of such jobs exist in the national economy, the ALJ did not err in concluding that Hilliard was not disabled.
 
 
 26
 Based on the medical evidence provided by Drs. Wells and Farvar, and the testimony of the VE, the ALJ's conclusion was supported by substantial evidence. Drs. Wells and Farvar demonstrated that Hilliard could perform sedentary work with a sit/stand option. The VE testified at the hearing that such work existed to a significant extent in the region where Hilliard lived.
 
 
 27
 Hilliard's specific challenges to the VE's testimony, and to the ALJ's credibility determination of Hilliard's claims of pain, are considered below. Hilliard challenges the ALJ's conclusion for other reasons based on three arguments: (1) the ALJ erroneously relied on the opinion of an attending physician at a Veterans Administration Hospital that Hilliard could be employed, as the physician did not consider Hilliard's orthopedic problems; (2) the ALJ ignored Hilliard's complaints of hearing and vision loss, knee problems, and difficulties in manipulation; and (3) the ALJ erroneously found that Hilliard did not have angina. None of these arguments is sound.
 
 
 28
 First, while the ALJ noted that Veterans Administration Hospital progress notes indicated that Hilliard was employable, Hilliard cannot plausibly assert that this evidence alone determined the ALJ's overall conclusion as to Hilliard's impairments. There was more than enough evidence elsewhere in the record to support the ALJ's actual conclusions, and the ALJ stated that he "review[ed] all the evidence of record." Absent any basis to question the veracity of this statement, this court must accept it at face value.
 
 
 29
 Second, it is not true that the ALJ did not consider Hilliard's knee or vision problems. The ALJ specifically noted the emergency room report indicating that Hilliard's patellas had been removed. Also, the ALJ included "status post knee fractures of the patellas" in his list of impairments that led the ALJ to conclude that Hilliard was severely impaired. The ALJ also included in his list of impairments Hilliard's glaucoma. There is no specific evidence that the ALJ either ignored or considered Hilliard's hand and hearing problems, although the ALJ did aver that he had considered all evidence in the record. In any event, the ALJ was entitled to ignore Hilliard's claims of manipulation problems, in light of Drs. Wells's and Farvar's conclusion that Hilliard had no manipulative impairments. Finally, even if Hilliard's hearing, vision and manipulative problems were fully credited, the VE testified under cross-examination by Hilliard's counsel that only the following sedentary positions with a sit/stand option would be precluded or perhaps precluded: (1) bottle inspector, (2) security monitor, (3) cashier, (4) ticket seller, and (5) packager. Even if this court conceded that each of these positions were completely ruled out of the total of 96,300 jobs that the VE testified were available to Hilliard, the total jobs remaining in the positions of order clerk and telephone order clerk would still total 29,600.
 
 
 30
 Third, Hilliard claims that he has been diagnosed as having angina, and that the ALJ incorrectly refused to recognize this. Hilliard does not provide a pinpoint citation to the record to support this conclusion, but he appears to be referring to a Veterans Administration Hospital progress report dated July 27, 1992. It uses the word "angina" twice, but it is not exactly clear from the record that the attending physician diagnosed Hilliard as having this condition. Supporting the inference that no such diagnosis was made is a notation under the heading "angina," stating "study after cath." The record in Hilliard's case was kept open to receive the results of a cardiac catheterization to be conducted after the hearing before the ALJ. We can only conclude from the failure of Hilliard to point to the results of this catheterization (in fact, the results appear never to have been entered into the record), that it was not erroneous for the ALJ to have concluded that Hilliard did not have angina. The best evidence available to the ALJ at the time, which Hilliard does not challenge, are coronary stress tests given to Hilliard on September 20, 1990 and August 28, 1991, which showed no evidence of ischemia.[3] J.A. 20.
 
 IV. ALJ'S TREATMENT OF HILLIARD'S PAIN
 
 31
 The ALJ simply did not credit Hilliard's assertions of pain as being severe enough to prevent him from performing sedentary work with a sit/stand option. There is substantial evidence in the record to support this conclusion.
 
 
 32
 Pain is to be considered in the following fashion:
 
 
 33
 An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statement of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.
 
 
 34
 42 U.S.C. § 423(d)(5)(A) (1992). Hilliard argues that the ALJ committed legal error by requiring that objective medical evidence support his claims of pain. Under § 423(d)(5)(A), Hilliard is simply incorrect in this argument. Section 423(d)(5)(A) establishes four essential points: (1) claims of pain alone are not conclusive in the disability determination; (2) objective medical evidence must exist that makes reasonable any claims of pain; (3) consideration of both objective medical evidence of conditions giving rise to pain combined with subjective claims of pain must lead to a conclusion of disability; and (4) objective medical evidence of pain, such as deteriorating nerve or other muscle tissue, must be considered. Contrary to Hilliard's suggestion, the ALJ was bound to consider whether objective medical evidence supported Hilliard's claims of pain, if only because a subjective claim of pain is not enough to support a conclusion that Hilliard is disabled.
 
 
 35
 "In a social security case, [the] circuit court 'may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility.' " Cohen v. Secretary of HHS, 964 F.2d 524, 528 (6th Cir.1992) (citations omitted). The ALJ here had ample objective medical evidence from which to conclude that Hilliard was not suffering from any condition that would be reasonably expected to give rise to pain. Moreover, the ALJ simply disbelieved Hilliard's claims of pain. One of the reasons the ALJ cited was that Hilliard's daily routine was inconsistent with his claims of pain that would prevent sedentary work with a sit/stand option, particularly his visits to neighbors, walks, drives, and gun cleaning activities. Such inconsistency is a proper basis for a credibility determination denying benefits. Blacha v. Secretary of HHS, 927 F.2d 228, 231 (6th Cir.1990) (per curiam).
 
 V. VE'S TESTIMONY
 
 36
 Hilliard argues that the vocational expert failed to provide examples of any specific jobs that he could perform if he had grasping and vision difficulties. Hilliard's claim is false. Hilliard's counsel questioned the VE about these difficulties and they were addressed. As noted above, some of the jobs the VE identified could still be performed by Hilliard, even assuming these impairments completely eliminated certain other categories of jobs. Thus, there was no error here in relying on the testimony of the VE, as this testimony was based on hypothetical questions which properly considered the extent of Hilliard's impairments. Varley v. Secretary of HHS, 820 F.2d 777, 779 (6th Cir.1987).
 
 
 37
 VI. MAGISTRATE'S TREATMENT OF CHIROPRACTOR EVIDENCE
 
 
 38
 The magistrate's report noted that "[c]hiropractor's [sic ]
 
 
 39
 reports are not considered to be acceptable sources of
 
 
 40
 medical evidence for medical impairments." Hilliard claims
 
 
 41
 this is legal error. Hilliard is incorrect, however,
 
 
 42
 because 20 C.F.R. § 416.913
 
 
 43
 (a) lists only six "acceptable medical sources," and
 
 
 44
 chiropractors' reports are not included. Chiropractors'
 
 
 45
 reports are considered "other sources" of evidence that help
 
 
 46
 the Secretary "understand how ... [an] impairment affects
 
 
 47
 ... ability to work." Moreover, Hilliard does not
 
 
 48
 demonstrate the significance of this objection to the
 
 
 49
 magistrate's report to his burden to overturn the
 
 
 50
 Secretary's decision to deny benefits. Even if the
 
 
 51
 magistrate had erred in its characterization of Hilliard's
 
 
 52
 chiropractor's evidence, this would not warrant reversing
 
 
 53
 the district court's order.
 
 VII
 
 54
 Substantial evidence supports the Secretary's determinations that Hilliard was not disabled because he retained the RFC to perform sedentary work with a sit/stand option. The district court did not err in its consideration of Hilliard's claims of pain or in its consideration of the VE's testimony. The district court's order dismissing Hilliard's administrative appeal is AFFIRMED.
 
 
 
 *
 The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 In his brief, Hilliard claims that he was also diagnosed with chronic back pain in August 1992. The specific cite Hilliard provides to support this spans more than 120 pages. The record Hilliard is referring to seems to be a handwritten medical progress report, dated August 13, 1992, which states:
 Claims compliance [illegible]
 Seen at AAVAH for back problem. Has scheduled cardiac cath 9/3 at AAVAH.
 (+) chronic back pain.
 This would seem to indicate that the physician who filled out the progress report was merely recording that Hilliard was going to AAVAH (a Veterans Administration Hospital) with a complaint of chronic back pain. Of course it may mean that Hilliard was diagnosed with chronic back pain, but this conclusion is by no means unavoidable.
 
 
 [2]
 The omission of any name or even the word, "claimant," in p 12 does not inspire confidence that Hilliard was being given much individualized attention. The court gets the impression here that the ALJ plugged Hilliard's case into a form, forgetting even to insert Hilliard's name in the appropriate place
 
 
 [3]
 A prominent medical dictionary provides the following definition: "myocardial ischemia inadequate circulation of the blood to the myocardium, usually as a result of coronary artery disease. See also angina pectoris; myocardial infarction. " Stedman's Medical Dictionary 803 (25th ed. 1990)